I,SAUNDERS, Judge.
Mr. Warren A. Shepherd filed this lawsuit for malicious prosecution against Mr. Tommy Williams. The basis for the lawsuit is Mr. Williams’ action in filing a warrant for the arrest of Mr. Shepherd on the charge of cruelty to animals. After presentation of Mr. Shepherd’s case in chief, Mr. Williams filed a motion to dismiss. The trial court granted the motion. From this determination, Mr. Shepherd has filed the instant appeal. On appeal, we reverse.

FACTS

Mr. Warren A. Shepherd and Mr. Tommy Williams have been neighbors since June 1990. Mr. Shepherd testified that he thought he and Mr. Williams had been friends throughout their years of living-next door to each other. Mr. Shepherd testified that he began experiencing problems with Mr. Williams on May 1, 1999. On that date, Mr. Shepherd testified that he “was outside doing some work on my weed eaters,” when his wife told him that *635 Mr. Williams had accused him of shooting his cat. Mr. Shepherd testified that earlier his wife had been in their garden picking asparagus. While in the garden, he noticed a black snake next to the asparagus patch. He said that he shot the snake. Mr. Shepherd testified that he never shot Mr. Williams’ cat.
On May 4, 1999, the Vernon Parish Sheriffs Office issued a warrant for Mr. Shepherd’s arrest on the charge of cruelty to animals. Mr. Shepherd did not know a warrant had been issued for his arrest until the following Monday. At that time, Deputy Jimmy Jeter called Mr. Shepherd and asked him to go to the sheriffs office because he had a warrant for his arrest.
After his arrest, Mr. Shepherd bonded out of jail. Mr. Shepherd was never prosecuted on the charge of cruelty to animals, in fact, the district attorney’s office | gdropped the charge. Sometime after this incident, Mr. Shepherd learned that Mr. Williams had also had someone else in his neighborhood arrested, Mr. Harold Higgins. Mr. Shepherd suffered from stress, migraine headaches, and upset stomach as a result of his arrest. Mr. Shepherd testified that he sought medical treatment for his symptoms, and a doctor prescribed Lansporal to him for his upset stomach. Mr. Shepherd was on Lansporal as of the date of trial and that he had been taking Motrin for his headaches.
'In addition, Mr. Shepherd testified that his coworkers made fun of him for his arrest. Mr. Shepherd stated, “[w]ell my workers, you know, they will peek their head in the office and cat killer, you know, I’ll be walking down the hall, you know, and the other workers walk up to me and they joke around about it calling me cat killer, but I really take it personal.” Mr. Shepherd testified that prior to that time, he had not experienced such ridicule at work.
The effect of Mr. Shepherd’s arrest on his job, however, was not limited to ridicule by his coworkers. Mr. Shepherd testified that he is currently employed as a military awards technician at Fort Polk. Prior to his arrest, he applied for employment as an in and out processing supervisor, which is a GS-7 position. This position requires a security clearance. Mr. Shepherd testified that he was accepted for the position, but as a result of his arrest, his security clearance was terminated. Mr. Shepherd was forced to return to the position as a military awards technician, which is a GS-5 position. Mr. Shepherd testified that his yearly pay would have increased significantly had Mr. Shepherd been able to retain his position as an in and out processing supervisor.
At trial, Mr. Williams acknowledged that on or about May 1, 1999, he had a warrant issued for Mr. Shepherd’s arrest. Mr. Williams testified that on that date, he Lasked Ms. Shepherd if “they [sic] shot my cat.” Mr. Williams admitted that Ms. Shepherd had not told him that anyone had shot his cat. In addition, Mr. Williams admitted that he did not speak to Mr. Shepherd regarding the cat.
Mr. Williams stated that on May 1, 1999, he heard a gunshot fired behind his barn. Mr. Williams testified that he did not see who fired the gun, or at what object that person was shooting. Regarding his reasoning for filing a warrant, the following dialogue took place at trial:
Q. [Y]ou went to a magistrate and you swore out a warrant for the arrest of Mr. Sheph[e]rd not knowing whether or not he had anything to do with the killing of your cat?
A. Well, when a gun goes off and your cat comes up with blood all over it, what does that say?
Q. Well, I don’t know what that says, but let me ask you this, my question to you is, you went and you were placed under oath and you swore out a warrant saying, or swearing, to the fact that on or about May 1st, 1999 Warren A. Sheph[e]rd shot your cat, didn’t you?
A. Yes.
*636 Q. And, you didn’t have any idea when you made that warrant for the arrest of Mr. Shep[he]rd that he had shot your cat, did you[?]
A. I didn’t understand the question you asked me.
Q. Well, you didn’t know whether or not Mr. Sheph[e]rd shot your cat when you got that warrant for his arrest, did you?
A. Well, the gunshot came from in the. back and the cat come [sic] home bloody, so.
Q. Well, why did you have him arrested?
A. Well, ’cause his wife told me when I went and asked her that it ...
[[Image here]]
|4Q. What did she tell you?
A. She just looked at me real mean and told me that the cat tried to attack her.
Q. Tried to attack her, not Mr. Sheph[e]rd.
A. Yeah, that’s what she told me.
Q. Okay, she didn’t say that the cat attacked Mr. Sheph[e]rd, it attacked her, so, if anybody would have shot the cat it would have been her, I guess, if we want to pick out a suspect?
A. Well, he is the man of the house.
[[Image here]]
Q. Oh, okay, so, that’s why you had him arrested ’cause he is the man of the house?
A. Well, I mean, that’s the only thing I knew to do.
Q. Even though you didn’t have any idea, and you didn’t have any evidence, did you, that Mr. Sheph[e]rd shot your cat, that’s who you said shot your cat and you had him arrested?
A. Yes. Normally a woman don’t [sic] shoot a shotgun.
Q. You had him arrested — you don’t like Mr. Shep[he]rd, y’all don’t get along.
A. Me and Mr. Sheph[e]rd was the best of friends.'
Q. Then why did you have him arrested without knowing for sure whether or not he shot your cat?
A. Because of his wife, his wife gives me problems all the time.
[[Image here]]
Q. But, you never did find out [who shot your cat], did you?
A. No, I don’t know to this day who done [sic] it, but I know somebody done [sic] it.
Mr. Williams testified that after the cat returned home injured, it lived for approximately three or four months. During that time, Mr. Williams did not take the |scat to a veterinarian despite its injuries.
Mr. Harold Percy Higgins also testified at trial. Mr. Higgins stated that he has lived in the same community where Mr. Shepherd and Mr. Williams reside since July 1985. Mr. Higgins is Mr. Williams’ neighbor. He testified that he and Mr. Williams did not get along well. Mr. Higgins testified that he has been arrested at least twice, in 1986 and 1987, as the result of warrants issued pursuant to Mr. Williams’ complaints and that he could not recall specifically under which charges he had been arrested. Mr. Higgins also testified that he has been arrested pursuant to a warrant supported by Mr. William’s renter’s accusations for disturbing the peace. Mr. Higgins stated that he had never been prosecuted on any of these charges. Finally, Mr. Higgins related that during the time he has been neighbors with Mr. Williams, the sheriffs office sent deputies to his house on approximately 50-GO different occasions because of problems between the two.
Finally, Officer Michael Wilson, a deputy sheriff with the Vernon Parish Sheriffs Office, testified regarding the incident. Officer Wilson said that he went to Mr. Williams’ house on May 1, 1999. He testified that he had been dispatched to the Williams’ residence because a eat had been *637 shot. He indicated that Mr. Williams could not tell him who shot his cat. He further testified that he had not conducted an investigation of the shooting. He testified that he did not have Mr. Shepherd arrested; however, he explained to Mr. Williams the procedure by which he could get a warrant for the arrest of Mr. Shepherd. Finally, he stated that he did not find probable cause to arrest Mr. Shepherd.

PROCEDURAL FACTS

Mr. Shepherd filed a lawsuit for malicious prosecution against Mr. Tommy Williams on July 9, 1999. The basis for the lawsuit was Mr. Williams’ action in | ¿filing a warrant for the arrest of Mr. Shepherd on the charge of cruelty to animals. After Mr. Shepherd presented his case, Mr. Williams moved to dismiss the suit. Mr. Williams asserted that Mr. Shepherd had not met his burden in two respects. First, Mr. Williams urged that Mr. Shepherd had not proven that there was an absence of probable cause to have a warrant issued. Second, Mr. Williams urged that Mr. Shepherd had not established the element of malice. The trial judge found that Mr. Shepherd had not established that there was an absence of probable cause or that Mr. Williams was acting with malicious intent. Therefore, the trial court granted Mr. Williams’ motion to dismiss.
ASSIGNMENT OF ERROR
On appeal, Mr. Shepherd asserts only one assignment of error. Mr. Shepherd asserts that the trial court erred in granting Mr. Williams’ motion to dismiss after his case in chief.
STANDARD OF REVIEW
The trial court’s decision to grant a motion for involuntary dismissal is not reversible in the absence of manifest error. Citgo Petroleum Corp. v. Yeargin, Inc. 95-1574 (La.App. 3 Cir. 2/19/97); 690 So.2d 154, writ denied, 97-1223 (La.9/19/97); 701 So.2d 169, writ denied, 97-1245 (La.9/19/97); 701 So.2d 170; Continental Ins. Co. v. Three Seasons Pest Control Co., 94-1094 (La.App. 3 Cir. 2/1/95); 649 So.2d 1220. The issue to be resolved is not whether the trier of fact was right or wrong, but whether the fact finder’s conclusion was a reasonable one. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993).
MOTION TO DISMISS
As stated earlier, Mr. Shepherd asserts that the trial court erred by granting Mr. Williams’ motion to dismiss after Mr. Shepherd’s case in chief. A motion to dismiss 17is proper:
In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
La.Code Civ.P. art. 1672(B). The trial court’s decision to grant a motion to dismiss hinges upon whether the plaintiff has presented sufficient evidence to establish his case by a preponderance of the evidence. Johnson v. Lee, 00-78 (La.App. 5 Cir 5/30/00); 760 So.2d 1273; Yoes v. Shell Oil Co., 95-12 (La.App. 5 Cir. 5/10/95); 657 So.2d 241, writ denied, 95-2087 (La.11/17/95); 663 So.2d 714. Proof by a preponderance of the evidence is established when the evidence as a whole shows that a fact sought, to be proven is more probable than not. Johnson, 760 So.2d 1273; Brown v. Bowler, 94-667 (La.App. 5 Cir. 5/10/95); 659 So.2d 799.
“Malicious prosecution is the wrongful institution or continuation of a criminal or civil proceeding.” Frank L. Maraist & Thomas C. Galligan, Jr., LOUI *638 SIANA TORT LAW § 2-6(d) at p. 31 (1996).
The elements of a malicious prosecution action are: (1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff.
Jones v. Soileau, 448 So.2d 1268, 1271 (La.1984). In granting Mr. Williams’ motion to dismiss, the trial judge found Mr. Shepherd had not established that there was an absence of probable cause or that Mr. Williams was acting with malicious intent. Crucial to the determination of probable cause is whether the complainant had an fahonest and reasonable belief in the guilt of the accused at the time he pressed charges. See id.
In the instant case, the record shows a lack of probable cause on the part of Mr. Williams. Mr. Williams did not have an honest and reasonable belief that Mr. Shepherd shot his cat at the time he filed a warrant. The evidence shows that Mr. Williams did not see Mr. Shepherd shoot the cat or harm the cat in any way. Furthermore, although Mr. Williams went to Mr. Shepherd’s house, he did not speak with Mr. Shepherd. At trial, Mr. Williams admitted that he did not know who shot his cat at the time he had the warrant issued. The testimony does show that Mr. Shepherd’s wife said the cat had attacked her; however, that testimony favors a finding of probable cause with respect to Ms. Shepherd, not Mr. Shepherd. When asked why he filed charges against Mr. Shepherd and not Ms. Shepherd, Mr. Williams replied, “he is the man of the house.” Surely, the necessity of probable cause is not satisfied where the circumstantial evidence does not reasonably point to the person accused, and the claimant’s major consideration in filing the warrant is his subjective believe that “the man of the house” should be held responsible.
The trial court also determined that Mr. Shepherd had not proven that Mr. Williams was acting with malicious intent. Where there is an absence of probable cause, the court may infer the presence of malice. See Miller v. East Baton Rouge Parish Sheriff’s Dept., 511 So.2d 446 (La.1987); Jones, 448 So.2d 1268. The court may also infer malice from a finding that the defendant acted in reckless disregard of the other person’s rights. See Miller, 511 So.2d 446. Our supreme court has held that where the evidence shows that the claimant acted with the absence of caution and inquiry that a person should employ before filing a suit, malice will be inferred. Hibernia National Bank of New Orleans v. Bolleter, 390 So.2d 842 (La.1980). The | ^record is devoid of any evidence of probable cause on the part of Mr. Williams in filing the warrant for Mr. Shepherd’s arrest regarding cruelty to animals. The record does clearly show, however, Mr. Williams’ utter disregard for Mr. Shepherd’s rights. The record also shows Mr. Williams’ clear lack of caution and inquiry in filing the warrant. Therefore, we hold that the trial court should have inferred malice on the part of Mr. Williams in filing a warrant for Mr. Shepherd’s arrest. Accordingly, we find that the trial court erred in granting Mr. Williams’ motion to dismiss.

DECREE

Considering the foregoing discussion, we reverse the decision of the trial court and remand to the trial court for further proceedings. All costs of appeal are assessed against the Appellee, Mr. Williams.

REVERSED AND REMANDED.