STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

06-355


RICHARD J. MURRAY, JR., ET UX.

VERSUS

TOWN OF MANSURA, ET AL.


************

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT,
PARISH OF AVOYELLES, NO. 2000-1038-B,
HONORABLE WILLIAM BENNETT, DISTRICT JUDGE

************

MICHAEL G. SULLIVAN
JUDGE

************

Court composed of Sylvia R. Cooks, Michael G. Sullivan, and Glenn B. Gremillion,
Judges.


AFFIRMED IN PART AND REVERSED IN PART.

Richard J. Murray, Jr.
In Proper Person
Post Office Box 649
Mansura, Louisiana  71350
Plaintiffs/Appellants:
        Richard J. Murray, Jr.
        Barbara D. Murray

Randall Brian Keiser
Keiser Law Firm
Post Office Box 12358
Alexandria, Louisiana  71315-2358
(318) 443-6168
Counsel for Defendants/Appellees:
        Town of Mansura
        Phillip Lucas

SULLIVAN, Judge.

Plaintiffs, Richard and Barbara Murray, appealed the trial court's judgment in this malicious prosecution case. Defendants, the Town of Mansura and Chief of Police Phillip Lucas, answered the appeal and seek a reversal of the judgment. For the following reasons, the judgment of the trial court is affirmed in part and reversed in part.

### Facts and Procedural Background

Plaintiffs' claims arise out of two encounters between Richard Murray and Donald Alexander and Chief Lucas, on Sunday, March 21, 1999. The first encounter occurred after church services which Mr. Murray, Mr. Alexander, and Chief Lucas attended. Mr. Murray and Mr. Alexander approached Chief Lucas, seeking to discuss a previous warning they had been given by a Mansura police officer that they would be arrested if they remained in a park owned by the church after the posted hours of use. Not wanting to discuss the matter at that time, Chief Lucas asked the two men to go to the City Hall the following day. Chief Lucas then left the church and went to City Hall to address other business. Mr. Murray and Mr. Alexander followed him.

When Mr. Murray and Mr. Alexander arrived at City Hall, the main door was locked, so they banged on the door to gain entrance to the building. Chief Lucas went to the door and informed them again that he wanted them to return the next day to discuss the matter. According to Chief Lucas, the men became loud and belligerent, and he warned them to leave the premises or he would arrest them. When the men did not leave, he told them they were under arrest. At that point, the men left City Hall and went back to the church. Chief Lucas and two of his officers followed the men and took them into custody. The men were charged with disturbing the peace

and flight from an officer. Mr. Alexander and Mr. Murray testified that Chief Lucas was as loud, or louder, than they were and that he did not arrest them at the church.

After a trial on the charges, an *ad hoc* magistrate for the Town of Mansura dismissed the charges against Mr. Murray, finding that the facts surrounding the encounter did not meet the elements of disturbing the peace and/or flight from an officer.

Plaintiffs instituted suit for malicious prosecution. They amended their original claims to include claims under 42 U.S.C. § 1983 and claims for false arrest and false imprisonment and to assert claims against additional defendants. Defendants removed the matter to federal court due to the federal claims. The federal district court dismissed all of the federal claims and remanded Plaintiffs' state claims to state court. Plaintiffs appealed that judgment to the U.S. Fifth Circuit, Court of Appeals, the Louisiana Supreme Court, and the U.S. Supreme Court. The judgment was affirmed at all levels.

Plaintiffs returned to state court to litigate their state claims, i.e., malicious prosecution and false arrest and imprisonment. Their claims for false arrest and imprisonment were dismissed on an Exception of Prescription filed by Defendants. Plaintiffs' claims against all but the original Defendants, Town of Mansura and Chief Lucas, were also dismissed. The matter was tried July 14, 2005. The trial court took the matter under advisement. In Reasons for Judgment, the trial court found Plaintiffs proved their claim of malicious prosecution against Defendants and awarded them $1,000.00 in damages.

### Assignments of Error

Plaintiffs specifically assign two errors in their appellate brief:

1) Whether municipal officials for the Town of Mansura, broke policy and practice or custom, depriving Plaintiffs of Constitutional rights, establishing municipal liability under 42 U.S. § 1983.

2) Whether the United States District Court properly granted the motion to dismiss and dismissed Plaintiffs' civil rights claims made pursuant to 42 U.S. § 1983 and remanded the remaining state law claims to a Louisiana district court.

In presenting these arguments, Plaintiffs complain of additional actions and/or findings by the trial court which we also address herein.

Plaintiffs were originally represented herein by counsel but represented themselves in the federal courts and in state court since their state claims were remanded by the federal district court. Their *pro se* representation has caused, and continues to cause, this factually-simple matter to be quite complicated.

***Standard of Review***

A finding of fact by a trial court or a jury may not be set aside in the absence of manifest error or unless it is clearly wrong. *Sportsman Store of Lake Charles, Inc. v. Sonitrol Sec. Sys. of Calcasieu, Inc.*, 99-201 (La. 10/19/99), 748 So.2d 417. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. *Id.* Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). However, if such factors are not present, and a fact finder's determination is based on its decision to credit the testimony of

3

one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. *Id.*

### *Discussion*

### *Federal Claims*

In their original appellate brief, Plaintiffs complain of the dismissal of their federal constitutional and/or civil rights claims by the federal district court, but assert in their Reply and Rebuttal Brief that they do not seek review of the federal court's judgment. For clarity, we observe that the judgment of the federal district court is final, and this court has no jurisdiction to consider any complaints regarding it. *See Swope v. St. Mary Parish Sch. Bd.*, 256 La. 1110, 241 So.2d 238 (1970), where the Louisiana Supreme Court held that Louisiana state courts cannot consider appeals of judgments rendered by federal courts. *See also* La.Const. art. 5, § 10.

### *Default Judgment against Mayor Harold Quebedeaux*

Plaintiffs urge that the trial court erred in refusing to grant their Motion for a Default Judgment against the Mayor of Mansura, Harold Quebedeaux. The trial court denied Plaintiffs' motion without a hearing, noting that Mayor Quebedeaux had previously been dismissed.

Plaintiffs added Mayor Quebedeaux as an additional defendant in their Second Supplemental and Amending Petition for Damages which was filed July 11, 2002. They filed a motion for entry of default on March 22, 2005. Pursuant to an Exception of Prescription, Plaintiffs' claims against Mayor Quebedeaux were dismissed by the trial court on May 23, 2005, on the basis that the claims were prescribed. Mayor Quebedeaux filed an Answer on May 26, 2005.

4

A default judgment may be entered against a defendant only when that defendant fails to file an answer. La.Code Civ.P. art. 1701. If a defendant files an answer after the delays for filing an answer have elapsed but before a default judgment entered against him is confirmed, the default judgment cannot be confirmed. La.Code Civ.P. art. 1002.

Mayor Quebedeaux filed an answer to Plaintiffs' Second Supplemental and Amending Petition after the delay for filing an answer provided in La.Code Civ.P. art. 1001, but the default judgment entered on March 22, 2005, had not been confirmed. Therefore, the trial court did not err in denying the motion for default judgment against him. La.Code Civ.P. art. 1002.

***False Arrest and Imprisonment Claims***

In their Petition for Damages filed September 28, 2000, Plaintiffs identified two dates, March 18, 2000, and March 21, 1999, as dates on which the events giving rise to the only claim asserted therein, malicious prosecution, occurred. Evidence in the record establishes that the events at issue occurred on March 21 and 22, 1999, not March 2000.

On July 11, 2002, Plaintiffs filed a Second Supplemental and Amending Petition for Damages in which they named additional defendants and asserted additional claims arising from the events of March 21-22, 1999, including false arrest and imprisonment and claims in violation of federal law. Plaintiffs named the Town of Mansura and Chief Lucas as defendants in their Petition for Damages. They named Mayor Quebedeaux, Renee Roy, a local attorney who served as attorney for the Town of Mansura and who was appointed *ad hoc* magistrate of Mansura's Mayor's Court for the trial of Mr. Murray's criminal charges, Ms. Christine Demouy,

5

a member of Plaintiffs' church, and Benjamin Burns, Plaintiffs' former attorney, as additional defendants in their Second Supplemental and Amending Petition.

The trial court dismissed all of Plaintiffs' additional claims,[1] including their claims for false arrest and imprisonment. Finding the additional claims to be prescribed, the trial court explained:

> [A]ll plaintiffs have a period of one year from the date that injury or damage is sustained within which to institute a Petition for Damages. In the case at bar, Richard Murray was arrested on March 21, 1999 and released March 22, 1999. For any claim of injury or damage in relation to an alleged false arrest and/or false imprisonment, Richard Murray had a period of one year . . . within which to file a Petition for Damages alleging false arrest and/or false imprisonment. In the case at bar, a Petition for Damages was not filed until September 27, 2000 and that Petition did not include a claim for false arrest and/or false imprisonment. Even if it had, those claims would have been prescribed.

Plaintiffs assert that all of the claims alleged in their Second Supplemental and Amending Petition for Damages "can be linked back" to their Petition for Damages filed September 27, 2000. They also urge that prescription for their false arrest and imprisonment claim was suspended and did not accrue until one year from Mr. Murray's release from jail because the appointment of Renee Roy, attorney for the Town of Mansura, to sit *ad hoc* as judge for the criminal proceeding against Mr. Murray was improper and resulted in the Mayor's Court not having jurisdiction to adjudicate the matter.

Louisiana Code of Civil Procedure Article 1153, which governs the relation back of amendments, provides:

> When the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading.

---

[1]Prescription of Plaintiffs' federal claims is not addressed herein because all of their federal claims were disposed by the federal district court.

The liberative prescriptive period for Plaintiffs' malicious prosecution claim did not begin to run until the underlying prosecution was dismissed. *Manuel v. Deshotels*, 160 La. 652, 107 So. 478 (1926); *see also De Bouchel v. Koss Const. Co.*, 177 La. 841, 149 So. 496 (1933). The charges against Mr. Murray were dismissed on September 27, 1999. Therefore, when Plaintiffs filed their Petition for Damages on September 27, 2000, their malicious prosecution claim was not prescribed.

Contrary to a malicious prosecution claim, a claim for false arrest and imprisonment arises the day the false arrest and imprisonment occurs. In *De Bouchel,* 177 La. 841, 149 So. 496, the plaintiff asserted claims for false imprisonment and malicious prosecution. The supreme court held that the false imprisonment cause of action, which includes a claim of false arrest, arose on the day the plaintiff was imprisoned and that the cause of action was subject to a one year prescriptive period. Prescription on such a claim begins to run no later than the date on which the imprisonment is terminated. *Id.* Thus, prescription on Plaintiffs' false arrest and imprisonment claim began accruing no later than March 22, 1999, the date Mr. Murray was released from jail, and their assertion of this claim in their Second Supplemental and Amending Petition filed on July 11, 2002, came too late, as it was already prescribed. Once prescribed, a claim cannot be revived. *Etienne v. Nat'l Auto. Ins. Co.*, 99-2610 (La. 4/25/00), 759 So.2d 51.

In *De Bouchel*, 177 La. 841, 149 So. 496, the supreme court treated the plaintiff's false arrest and imprisonment claim and malicious prosecution as two separate claims. The court did not find that the criminal proceeding, which gave rise to the malicious prosecution claim, affected the accrual of prescription on the false arrest and imprisonment claim. *See also, Hampton v. Kroger Co.*, 27,073 (La.App.

7

2 Cir. 6/21/95), 658 So.2d 209, *writ denied*, 95-2140 (La. 1/5/96), 666 So.2d 298. The criminal proceeding on Mr. Murray's disturbance of the peace and flight from an officer charges did not affect prescription on his false arrest and imprisonment claim; therefore, any irregularity in the appointment of an *ad hoc* judge to the Mansura Mayor's Court to try the charges did not affect the running of prescription on Plaintiffs' false arrest and imprisonment claim.

Plaintiffs' claims against the additional defendants named in their Second Supplemental and Amending Petition did not arise out of the events surrounding Mr. Murray's arrest; therefore, their claims against these defendants did not relate back to their Petition for Damages. La.Code Civ.P. art. 1153. Accordingly, the trial court did not err in dismissing Plaintiffs' claims against the additional defendants.

### *Malicious Prosecution*

"Malicious prosecution is the wrongful institution or continuation of a criminal or civil proceeding." *Shepherd v. Williams*, 00-1506, p. 7 (La.App. 3 Cir. 2/28/01), 780 So.2d 633, 637 (quoting FRANK L. MARAIST & THOMAS C. GALLIGAN, JR., LOUISIANA TORT LAW, § 2-6(d) at p. 31 (1996)). A plaintiff who files a claim for malicious prosecution must prove: (1) the commencement or continuance of an original criminal or civil proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to the plaintiff. *Id.*

The trial court found, and Defendants do not deny, that Plaintiffs satisfied the first three elements of their claim. Accordingly, we begin our discussion with the

8

fourth element, probable cause. The plaintiff in a malicious prosecution case must show there was no probable cause for his arrest. "Probable cause does not depend upon the actual state of the case in point of fact, but on the honest and reasonable belief of the party prosecuting." *Graham v. Interstate Elec. Co.*, 170 La. 392, 395, 127 So. 879, 880 (1930); *see also Eusant v. Unity Indus. Life Ins. and Sick Benefit Ass'n of New Orleans, Inc.*, 195 La. 347, 354, 196 So. 554, 556 (La.1940).

Chief Lucas charged Mr. Murray and Mr. Alexander with disturbing the peace and flight from an officer. The trial court determined that Chief Lucas did not have "an honest and reasonable belief that Murray was guilty of Disturbing the Peace and Flight from an Officer," and, therefore, did not have probable cause to arrest him on these charges. Defendants assign as error the trial court's determination that Chief Lucas did not have probable cause to arrest Mr. Murray for disturbing the peace.

Disturbing the peace is defined in part as:

[T]he doing of any of the following in such manner as would foreseeably disturb or alarm the public:

. . . .

(2) Addressing any offensive, derisive, or annoying words to any other person who is lawfully in any street, or other public place; or call him by any offensive or derisive name, or make any noise or exclamation in his presence and hearing with the intent to deride, offend, or annoy him, or to prevent him from pursuing his lawful business, occupation, or duty[.]

La.R.S. 14:103(A).

The trial court's determination was based on Chief Lucas being "held to a higher degree of restraint than the average citizen" because he is a police officer. In *State v. Woolverton*, 474 So.2d 1003 (La.App. 5 Cir. 1985), the evidence presented was found to be insufficient to support the defendant's conviction for disturbing the

9

peace. The arresting officers testified that the defendant made "argumentative statements" and complained that they had no right to remove his furniture.[2] The officers also testified that the defendant cursed and used "a little profanity," but they did not specify what words the defendant used. The officers unsuccessfully attempted to quiet the defendant down before arresting him.

The court held that "police officers are expected to exercise more restraint than others and insulting language is less likely to cause a breach of the peace" with regard to them. *Id*. at 1005. The *Woolverton* court determined that the evidence did not establish that the police had probable cause to arrest the defendant for disturbing the peace. *See also, State in the Interest of W.B.*, 461 So.2d 366, 368 (La.App. 2 Cir. 1984), where the court held that the defendant's addressing the officer as a "G__ D___ white M_____ F_____" was constitutionally protected speech and did not provide probable cause for the defendant's arrest for disturbing the peace.

Chief Lucas testified that Mr. Murray was aggressive in his actions and that he cursed, but he did not testify as to the specific language Mr. Murray used. In light of the jurisprudence regarding the higher standard applicable to police officers, we find no error with the trial court's conclusion that Chief Lucas did not have probable cause to arrest Mr. Murray with respect to Mr. Murray's actions and language vis-a-vis him or his officers.

As testified by Chief Lucas and acknowledged by Mr. Alexander, Chief Lucas' children were present with him at the church and City Hall during his encounters with Mr. Murray and Mr. Alexander, and Defendants argue that Chief Lucas had probable

---

[2]The events in *Woolverton*, 474 So.2d 1003, arose out of an eviction proceeding.

cause to arrest Mr. Murray for the disturbing the peace with respect to his children.

The trial court did not address the charge of disturbing the peace in this regard.

Chief Lucas testified in his discovery deposition:

A: See, I was in the city hall, and my kids were here, like I said earlier, my kids - -

Q: Right.

A: - - I don't let my kids get involved in that kind of stuff - -

Chief Lucas further testified in his trial deposition:

A: Right. Well, after I give them orders to leave the city hall because due to the fact that like I say it was the wrong timing they refused. They refused. Like I say, by disturbing - I feel like - how they was disturbing the peace or like I say, my children was there . . . .

. . . .

A: And I feel that wasn't the right time to discuss this issue in front of my kids.

Q: Okay. So after you asked them repeatedly to leave and they didn't and they continued to be loud then you placed them under arrest for disturbing the peace? Is that right?

A: Right. Right. I sure did.

Q: Okay. And that was because you had two minor children there and . . . .

A: Exactly.

Q: . . . they were being loud and cursing?

A: Right.

. . . .

A: And I kept on telling the, I said this not a place, I got my kids in here, you know and right then and there I told them to leave because they was causing a disturbance . . .

11

Q:      . . . Who was also present at the municipal building whenever Mr. Alexander and Mr. Murray showed up?

A:      Okay.  My kids and also Rodney Barbin and Tony St. Romain.

. . . .

A:      Yeah.  I told them to leave.

Q:      Why did you tell them that?

A:      Because at the time it wasn't the time to - for - my kids and -it wasn't the time for them to be in the building, I said because I had my kids in there.

. . . .

Q:      [D]id your arrest for disturbing the peace have anything to do with the church or anything other than what - - how Mr. Murray acted here in the municipal building?

A:      That's what it was all about, this building.

Q:      Okay.

A:      And most of all in front of my kids.

Chief Lucas' testimony leads us to conclude that he was legitimately concerned about Mr. Murray and Mr. Alexander's behavior in the presence of his children.  In *State v. Quest*, 00-205 (La.App. 5 Cir. 10/18/00), 772 So.2d 772, *writ denied*, 00-3137 (La. 11/2/01), 800 So.2d 866, yelling, screaming, and cursing in a public place was held to satisfy the requirements of La.R.S. 14:103(A).  We find Chief Lucas had an honest and reasonable belief that the charge of disturbing the peace was valid with regard to Mr. Murray and Mr. Alexander's actions in the presence of his children.  For these reasons, we reverse the trial court's determination that Chief Lucas did not have probable cause to arrest Mr. Murray for disturbing the peace.

12

Defendants also urge that Chief Lucas had probable cause to arrest Mr. Murray for remaining after being forbidden in violation of La.R.S. 14:63.3. They argue that the trial court's determination that Chief Lucas' arrest of Mr. Murray was without probable cause is manifest error for this reason as well. La.R.S. 14:63.3(A) provides:

> No person shall without authority go into or upon or remain in or upon or attempt to go into or upon or remain in or upon any structure, watercraft, or any other movable, or immovable property, which belongs to another, including public buildings and structures, ferries, and bridges, or any part, portion, or area thereof, after having been forbidden to do so, either orally or in writing, including by means of any sign hereinafter described, by any owner, lessee, or custodian of the property or by any other authorized person.

Chief Lucas testified that he told Mr. Murray and Mr. Alexander to leave City Hall and return the next day to discuss their complaints. He further testified that he told them this more than one time, but the men did not leave. His testimony on this issue was not refuted by either Mr. Murray or Mr. Alexander. We agree with Defendants that Chief Lucas also had probable cause to arrest Mr. Murray for remaining after being forbidden.

A finding of probable cause to arrest Mr. Murray for disturbing the peace precludes a finding in favor of Plaintiffs. *Shepherd,* 780 So.2d 633; *Kenner v. Milner*, 187 So. 309 (La.App. 1 Cir. 1939). Accordingly, we reverse the judgment of the trial court in favor of Plaintiffs.

### Recusal of Trial Court Judge

Plaintiffs argue that the trial court judge should have recused himself from trying this case because they had sued him previously. During cross-examination regarding prior lawsuits he had filed, Mr. Murray testified that he had sued the trial court judge. Mr. Murray also testified that he did not consider the trial court judge to be biased against him or his wife. Plaintiffs had not filed a motion to recuse prior

13

to trial and did not ask the trial court judge to recuse himself during or after his cross-examination.

Article 151 of the Louisiana Code of Civil Procedure delineates the grounds for the recusal of a trial court judge. It provides:

A. A judge of any court, trial or appellate, shall be recused when he is a witness in the cause.

B. A judge of any court, trial or appellate, may be recused when he:

(1) Has been employed or consulted as an attorney in the cause, or has been associated with an attorney during the latter's employment in the cause;

(2) At the time of the hearing of any contested issue in the cause, has continued to employ, to represent him personally, the attorney actually handling the cause (not just a member of that attorney's firm), and in this case the employment shall be disclosed to each party in the cause;

(3) Has performed a judicial act in the cause in another court;

(4) Is the spouse of a party, or of an attorney employed in the cause; or is related to a party, or to the spouse of a party, within the fourth degree; or is related to an attorney employed in the cause, or to the spouse of the attorney, within the second degree; or

(5) Is biased, prejudiced, or interested in the cause or its outcome or biased or prejudiced toward or against the parties or the parties' attorneys to such an extent that he would be unable to conduct fair and impartial proceedings.

C. In any cause in which the state, or a political subdivision thereof, or a religious body or corporation is interested, the fact that the judge is a citizen of the state or a resident of the political subdivision, or pays taxes thereto, or is a member of the religious body or corporation, is not a ground for recusation.

A motion to recuse a trial court judge must be in writing and must be "filed prior to trial or hearing unless the party discovers the facts constituting the ground for recusation thereafter, in which event it shall be filed immediately after these facts are discovered, but prior to judgment." La.Code Civ.P. art. 154.

A trial court judge may recuse himself from presiding over a proceeding whenever a ground for recusation exists. La.Code Civ.P. art. 152(A). Our review of the trial transcript indicates that the trial court judge had apparently forgotten that he had been sued by Mr. Murray until Mr. Murray's testimony during trial.

Plaintiffs had the opportunity to object to the trial court judge's trying their case before trial and when the issue arose during trial of the matter; they did not. Counsel for Defendants questioned Mr. Murray on this issue when it arose during the trial, and Mr. Murray testified that he did not have any concerns about the trial court judge trying the case. More importantly, Mr. Murray testified that he did not believe the trial court judge was biased against him or his wife. We find no error with the trial court judge's failure to recuse himself as judge herein.

### *Damages for Affidavit Executed by Chief Lucas*

Plaintiffs next complain that the trial court erred in not allowing them to assert claims for monetary damages because an affidavit executed by Chief Lucas included an incorrect statement regarding tapes of hearings held in the Mayor's Court. They contend the affidavit amounts to perjury in violation of La.R.S. 14:123, false swearing in violation of La.R.S. 14:125, and criminal conspiracy in violation of La.R.S. 14:26.

These claims arise out of Plaintiffs' pre-trial request for tapes of the hearings involving Mr. Murray that were held in Mansura's Mayor's Court. In response to Plaintiffs' request, Chief Lucas executed an affidavit which stated that in 1999 proceedings before the Mansura's Mayor's Court were not taped. It later became known that tapes were made of some proceedings held in the Mayor's Court in 1999, but not at the time of Mr. Murray's hearing. Chief Lucas testified that he is

15

responsible for *storing* all of the Mayor's Court's tapes, but he is not responsible for taping the proceedings.

Defendants urge that the trial court correctly denied Plaintiffs' request because violation of these statutes do not entitle one to monetary damages and because these statutes can only be enforced by law enforcement officials not private citizens. The trial court initially granted a motion allowing Plaintiffs to file claims relevant to the affidavit executed by Chief Lucas but withdrew that grant of permission after a hearing on a motion to vacate the order filed by Defendants.

A transcript of the hearing held on this issue is not contained in the appellate record. Without a transcript of the hearing, we do not know the basis of the trial court's withdrawal of its permission to allow Plaintiffs to file claims for damages they may have suffered as a result of Chief Lucas' affidavit. This court addressed this issue in *Preuett v. Preuett*, 517 So.2d 848, 849 (La.App. 3 Cir. 1987), explaining:

> Under La.C.C.P. arts. 2128 and 2129, the appellant had the duty to designate the record on appeal. *Eagle v. Eagle*, 477 So.2d 1293 (La.App. 3d Cir.1985). When there are factual issues involved and the record contains neither a transcript of testimony nor a narrative of facts, there is nothing for appellate review. Under such circumstances, we must presume that the judgment of the trial court is correct and supported by sufficient competent evidence. *Miller v. Miller*, 480 So.2d 789 (La.App. 3d Cir.1985), *writ denied*, 481 So.2d 1337 (La.1986). Appellant has failed to offer us sufficient evidence to overcome the presumption of correctness bestowed upon the trial court judgment.

There is no evidence that there are tapes of Mr. Murray's criminal proceeding in Mansura's Mayor's Court relative to this matter. Therefore, any error in Chief Lucas' affidavit did not cause damage to Plaintiffs, and they have no claim for damages because of an error contained in the affidavit.

16

Plaintiffs cite La.R.S. 9:5501.1 in support of this claim. This provision relates to affidavits of distinction for the cancellation of mortgages. It has no bearing on the issue presented herein.

***Evidence Not Introduced at Trial***

Plaintiffs rely upon testimony contained in deposition excerpts attached to their Pre-trial Memorandum and their Reply and Rebuttal Brief and another document attached to their Reply and Rebuttal Brief as support for some of their claims; these documents were not introduced at the trial of this matter. They also make assertions regarding facts that were not established at trial and seek relief on appeal that was not requested in the trial court, i.e., they attempt to assert a claim for defamation against counsel for Defendants. Plaintiffs have also filed a Motion for Production of Documents with this court seeking a copy of their depositions from defense counsel. In response to Plaintiffs' Motion for Production of Documents, Defendants filed a Motion to Strike. Action of both of these motions was referred to the merits of this appeal.

In *Tranum v. Hebert*, 581 So.2d 1023 (La.App. 1 Cir.), *writ denied*, 584 So.2d 1169 (La.1991), similar issues were presented. The court explained why Plaintiffs' requests cannot be granted by this court:

> Pursuant to La.C.C.P. art. 2164, an appellate court must render its judgment *upon the record on appeal*. The *record on appeal* is that which is sent by the trial court to the appellate court and includes the pleadings, court minutes, transcript, jury instructions, judgments and other rulings, unless otherwise designated. La.C.C.P. arts. 2127 and 2128; Official Revision Comment (d) for La.C.C.P. art. 2127. An appellate court cannot review *evidence* that is not in the *record on appeal* and cannot receive new evidence. *Davis v. Anderson*, 451 So.2d 1302 (La.App. 1st Cir.1984). The record before us contains memoranda (briefs), with attached exhibits, which were filed in the trial court. These memoranda and exhibits were not filed in evidence and are not

17

part of the *record on appeal*. In *State ex rel. Guste v. Thompson*, 532 So.2d 524, 527, n. 2 (La.App. 1st Cir.1988) appears the following:

> The briefs of the parties assert facts which are not in the record and refer to exhibits which have not been filed *in evidence* in the record. An appellate court may not consider *evidence* which is outside the record. La.C.C.P. art. 2164. The briefs of the parties and the attachments thereto are not part of the *record on appeal*. *Bunch v. Town of St. Francisville*, 446 So.2d 1357 (La.App. 1st Cir.1984). In addition, we may not consider exhibits *filed in the record which were not filed in evidence*, unless authorized by law to do so. *See, for example*, La.C.C.P. arts. 966 and 967.

> *See also Leyva v. Laga*, 549 So.2d 914 (La.App. 3rd Cir.1989). Further, the appellate briefs of the parties herein assert facts not contained in the petition or the record on appeal. The appellate briefs of the parties are not part of the record on appeal, and this court has no authority to consider on appeal facts referred to in appellate briefs, or in exhibits attached thereto, if those facts are not in the record on appeal. *Capital Drilling Company v. Graves*, 496 So.2d at 489; *Fred H. Moran Construction Corporation v. Elnaggar*, 441 So.2d 260 (La.App. 1st Cir.1983).

*Id*. at 1026-27. The discussion in *Tranum* makes it clear that this court cannot consider the documents submitted or the facts asserted by Plaintiffs that are not contained in the record. For these same reasons, Plaintiffs' Motion for Production of Documents is futile, as this court cannot consider any documents produced in response to such a motion. Accordingly, Defendants' Motion to Strike is granted.

In the trial court and in this court, Plaintiffs have urged at various times that they are not attorneys and do not know what is required for them to prevail on their claims. They complain that their lack of knowledge has caused them to be disadvantaged in obtaining justice.

The record of this matter establishes that the trial court and defense counsel have been understanding and lenient with Plaintiffs throughout the course of this litigation because they are not attorneys. Plaintiffs have not been held to the same

18

standards of skill and judgment that an attorney would have been held to in this matter. It is important that Plaintiffs realize that "[they] assume[d] all responsibility for [their] own inadequacy and lack of knowledge of procedural and substantive law" when they decided to represent themselves. *Deville v. Watch Tower Bible & Tract Soc., Inc.*, 503 So.2d 705, 706 (La.App. 3 Cir. 1987).

### *Disposition*

For the reasons discussed herein, the judgment in favor of Plaintiffs is affirmed in part and reversed in part. All costs of this appeal are assessed to Plaintiffs.

**AFFIRMED IN PART AND REVERSED IN PART.**