STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

09-1512


ELAINE SETLIFF, ET AL.

VERSUS

AARON SLAYTER, ET AL.


************

APPEAL FROM THE
ALEXANDRIA CITY COURT
PARISH OF RAPIDES, NO. 105,965
HONORABLE RICHARD E. STARLING, CITY JUDGE

************

DAVID E. CHATELAIN[*]
JUDGE

************

Court composed of John D. Saunders, Billy Howard Ezell, and David E. Chatelain, Judges.


AFFIRMED.


**Henry H. Lemoine, Jr.**
**Attorney at Law**
**607 Main Street**
**Pineville, Louisiana 71360**
**(318) 473-4220**
**Counsel for Defendant/Appellant:**
     **Aaron Slayter**

---

[*]Honorable David E. Chatelain participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**Thomas D. Davenport, Jr.**
**The Davenport Firm**
**1628 Metro Drive**
**Alexandria, Louisiana  71301**
**(318) 445-9696**
**Counsel for Plaintiffs/Appellees:**
      **Elaine Setliff**
      **Louisiana Lagniappe Realty, LLC**

**CHATELAIN, Judge.**

The defendant, Aaron Slayter, appeals from a final judgment rendered in favor of the plaintiffs, Elaine Setliff and Louisiana Lagniappe Realty, LLC (collectively referred to as LLR), awarding them $14,800.00 in damages, plus judicial interest, court costs, and attorney fees of $3,612.15 as a result of Slayter having breached a listing agreement. We affirm.

## FACTS AND PROCEDURAL HISTORY

On March 24, 2006, Slayter and LLR signed a listing agreement to facilitate the sale of a home in Pineville, Louisiana, of which Slayter was the purported owner. The agreement provided that the home would be listed for $529,000.00. The term of the agreement was to be from March 24, 2006 until October 1, 2006. In June of 2006, Slayter informed LLR that there was a possibility that the home's slab was defective. In later correspondence sent on July 18, 2006, Slayter advised LLR that there was no slab damage and that he wanted to increase the home's listing price to $950,000.00. Included in the correspondence was a statement that Slayter would remove LLR's signs if they were still on his property on July 19, 2006. On August 7, 2006, LLR sent a letter to Slayter releasing his property as withdrawn due to his "rude and obnoxious behavior."

On August 8, 2006, LLR received a call informing it that Slayter had put up a sign on his property that read "In My Opinion LOUISIANA LAGNIAPPE REALTY IS THE WORST REALTOR I'VE EVER DEALT WITH." The sign included the LLR trademark, a depiction of the state of Louisiana with a magnolia flower and cross. On August 24, 2006, LLR filed a petition for damages and for injunctive relief

against Slayter[1] seeking damages for breach of contract and slander/defamation and requesting that an injunction issue barring Slayter from displaying any signs concerning LLR or displaying its trademark.

The injunction was heard on August 3, 2007. In written reasons for ruling dated October 26, 2007, the trial court enjoined Slayter from using or displaying the LLR trademark. The trial court declined to issue an injunction preventing Slayter from using the words contained in the complained-of sign but warned that if he were to erect another similar sign, it would be at his own peril and at the risk that money damages may be awarded against him.

In February 2008, LLR filed a motion for partial summary judgment on the issue of whether Slayter had breached the listing agreement. Slayter opposed the motion. On June 16, 2008, the trial court granted LLR's motion. Slayter filed an application for supervisory writs, which this court denied on the basis that he had an adequate remedy by appeal. *See Setliff v. Slayter*, an unpublished writ bearing Docket Number 08-897 (La.App. 3 Cir. 8/12/08). Thereafter, Slayter filed an appeal of the partial summary judgment on liability. In *Setliff v. Slayter*, 08-1337 (La.App. 3 Cir. 1/7/09), 1 So.3d 799, we dismissed the appeal, finding that judicial economy would be served by reviewing the partial judgment after full adjudication of all the remaining claims at issue. In June of 2008, LLR filed a motion for partial summary judgment on the issue of damages incurred as a result of Slayter's breach of the listing agreement. The trial court signed a judgment on March 25, 2009, awarding LLR damages in the amount of $14,800.00,[2] plus judicial interest, court costs, and attorney

---

[1]The petition named as an additional defendant Phillips Signs, the business that made the signs at Slayter's direction.

[2]The trial court explained in its March 11, 2009 reasons for judgment that it arrived at the $14,800.00 figure by calculating 4% of $370,000.00, the amount Slayter sold the property for in the

fees of $3,612.15. Slayter appealed. Again we dismissed the appeal, finding that "appellate review of the partial summary judgments regarding the [breach of] contract issue would be a waste of judicial resources" because LLR's defamation claim was still pending. *Setliff v. Slayter*, 09-817, p. 3 (La.App. 3 Cir. 8/26/09), 19 So.3d 43, 45.

Thereafter, LLR filed a motion for and final judgment seeking a final judgment in the substance of the two previously rendered partial summary judgments. Slayter filed a peremptory exception of nonjoinder of necessary party[3] in the trial court on September 29, 2009, asserting for the first time that the owner of the property made subject of the listing agreement was the "Aaron L. Slayter, Sr. 1998 Revocable Trust [the trust]." Therein, Slayter excepted to LLR's motion for final judgment on the ground that LLR should be ordered to amend its pleadings to name the trust as a party defendant. Slayter's exception was set for contradictory hearing on November 18, 2009. Nevertheless, the trial court signed a motion for and final judgment on October 7, 2009, in favor of LLR and against Slayter in the amount of $14,800.00, plus judicial interest, court costs, and attorney fees in the amount of $3,612.15 and declaring that LLR had abandoned all other claims and causes of action contained in its petition for damages. The judgment specifically provided that it was "designated as a final judgment."

On October 12, 2009, Slayter filed a motion for devolutive appeal of the October 7, 2009 final judgment. He is now before this court presenting the following assignments of error: 1) the trial court erred in naming Slayter as the owner of the

_____

bond for deed contract.

[3]See La.Code Civ.P. arts. 641 and 642.

3

property, although it was shown that the trust was the owner of the property; 2) the trial court erred in finding that Slayter had breached the contract when it was proven that Setliff was the one who terminated the contract; 3) the trial court erred in finding that the listing agreement was a valid contract; and 4) the trial court erred in awarding damages with judicial interest, court costs, and attorney fees to Setliff, who terminated the contract, and against Slayter, who did not rightfully own the property.[4]

**DISCUSSION**

Appellate courts review summary judgments de novo, using the same criteria applied by the trial courts to determine whether summary judgment is appropriate. *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512 (La.7/5/94), 639 So.2d 730. A motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B). Summary judgment is favored and shall be construed "to secure the just, speedy, and inexpensive determination of every action . . . ." La.Code Civ.P. art. 966(A)(2).

*Assignment of Error Number One*

Slayter asserts that the trial court erred in naming him as the owner of the property made subject of the listing agreement when it was shown that the trust was, in fact, the owner of the property. This assertion is patently untrue. Slayter did not present the trial court with the argument that the trust was the owner of the subject

---

[4]Slayter also alleged that the trial court's findings were contrary to law and to the evidence, and he requested that this court conduct an errors patent review of the record. Because Slayter did not brief these two assignments of error, we will consider them abandoned. *See* Uniform Rules—Courts of Appeal, Rule 2–12.4. In addition, we note that the article authorizing an appellate court to conduct an error patent review of the record in a criminal appeal, La.Code Crim. P. art. 920, has no counterpart applicable to civil appeals.

property until he filed his exception of nonjoinder of necessary party on September 29, 2009, months after the hearings concerning the two partial summary judgments at issue in this appeal took place. In addition, because Slayter filed this appeal before the scheduled hearing date on his exception, the trial court was not given the opportunity to rule on the merits of the exception of nonjoinder. As the issue of ownership of the subject property was not litigated in the trial court, it is axiomatic that the trial court was neither shown that the trust was the owner of the property nor did it name Slayter as owner of the property. Slayter's first assignment of error is meritless.

*Assignment of Error Number Two*

In his second assignment of error, Slayter contends that the trial court erred in finding that he breached the listing agreement when it was proven that Setliff terminated the contract. Apparently Slayter has forgotten that he admitted, under oath, during the August 3, 2007 injunction hearing, that he had both breached and terminated the listing agreement by way of the July 18, 2006 letter that he sent to LLR, informing it that he wished to significantly increase the asking price of the home and directing LLR to remove its signs from his property. He further admitted, under oath, that he sold the Lenora Street property[5] via a bond for deed contract on August 18, 2006, for an amount significantly less than the asking price noted in the listing agreement. Such admissions clearly qualify as judicial confessions under La.Civ.Code art. 1853.[6] In light of those judicial confessions, we cannot say that the

---

[5]At no time during the August 3, 2007 injunction hearing did Slayter mention the trust.

[6]Louisiana Civil Code Article 1853 provides, in pertinent part, that "[a] judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it."

trial court erred in finding that he breached the listing agreement. Slayter's second assignment of error has no merit.

***Assignments of Error Numbers Three and Four***

Next, Slayter argues that because he was not the "proper owner" of the subject property, the trial court erred in finding that the listing agreement was a valid contract and in finding him liable for damages to LLR for his breach of the agreement. He fails to offer any codal or jurisprudential authority in support of his arguments. Slayter does not question the amount of damages or attorney fees awarded.

On the other hand, LLR points out that because Slayter does not contend that the listing agreement was improperly formed, that consent was lacking, or that the cause of the listing agreement was unlawful, the contract should be upheld and enforced. Moreover, LLR submits that it is immaterial whether Slayter or the trust is the actual owner of the subject property because Slayter entered into a personal obligation, rather than a real obligation, when he signed the listing agreement. Therefore, it asks this court to affirm the trial court's judgment in its entirety.[7]

Uniform Rules—Courts of Appeal, Rule 1–3 provides that "[t]he Courts of Appeal will review only issues which were submitted to the trial court and which are contained in specifications or assignments of error, unless the interest of justice clearly requires otherwise." As mentioned previously, the issue of ownership of the subject property was not "submitted to the trial court." Nevertheless, because the interest of justice will be served by our bringing this dispute to a conclusion, we will

---

[7]In its appellee brief, LLR requests that we award it additional attorney fees for the work performed on this appeal. Because it did not file an answer to Slayter's appeal, however, we are precluded from granting LLR any relief on appeal. *See Perron v. S. Landry Parish Econ. Indus. Dev. Dist.*, 03-1061 (La.App. 3 Cir. 3/3/04), 867 So.2d 86, *writ denied*, 04-1502 (La. 10/1/04), 883 So.2d 1009.

determine whether the trial court erred in enforcing the terms of the listing agreement and awarding LLR damages for Slayter's breach of the agreement.

We are cognizant of the fact that the failure to join a party to an action is a peremptory exception that may be noticed by the trial or appellate court on its own motion. La.Code Civ.P. arts. 645 and 927. Although a copy of the trust made the subject of Slayter's exception of nonjoinder is attached to the appellant's brief that he filed in this court, the record on appeal does not contain a copy of the trust. Courts of appeal are courts of record; thus, we have no authority to consider the trust document. See *Murray v. Town of Mansura*, 06-355, p. 18 (La.App. 3 Cir. 9/27/06), 940 So.2d 832, 844, *writ denied*, 06-2949 (La. 2/16/07), 949 So.2d 419, *cert. denied*, 552 U.S. 915, 128 S.Ct. 270 (2007) (quoting *State ex. rel. Guste v. Thompson*, 532 So.2d 524, 527, n.2 (La.App. 1 Cir. 1988), wherein this court noted that:

> The briefs of the parties assert facts which are not in the record and refer to exhibits which have not been filed in evidence in the record. An appellate court may not consider evidence which is outside the record. La.C.C.P. art. 2164. The briefs of the parties and the attachments thereto are not part of the record on appeal.

Because we cannot consider the trust document relied upon by Slayter, we are unable to determine whether his exception of nonjoinder has any merit. Accordingly, we will now determine whether Slayter, personally, was nonetheless bound by the listing agreement.

As provided in La.Civ.Code art. 1766, "[a]n obligation is strictly personal when its performance can be enforced only by the obligee, or only against the obligor." Louisiana Civil Code Article 1763 defines a real obligation as "a duty correlative and incidental to a real right." As a consequence of something being classified as a real obligation, that obligation "is transferred to the universal or particular successor who

7

acquires the . . . immovable thing to which the obligation is attached, without a special provision to that effect. La.Civ.Code art. 1764. As noted by Professor Yiannopoulos of Tulane University in his Louisiana Civil Law Treatise:

> [T]he civilian tradition . . . distinguishes sharply between the law of property and the law of obligations. A real right is a right that a person has in a thing, a matter of property law. A personal right is a right that a person has against another person to demand a performance, a matter of the law of obligations.

YIANNOPOULOS, 2 LOUISIANA CIVIL LAW TREATISE: PROPERTY, § 201 at 384 (4th ed. 2001). Further:

> A *personal* right may be defined as the legal power that a person (obligee) has to demand from another person (obligor) a performance consisting of giving, doing, or not doing a thing. The Louisiana Supreme Court has declared that "a personal right . . . defines man's relationship to man and refers merely to an obligation one owes to another which may be declared only against the obligor."

YIANNOPOULOS, 2 LOUISIANA CIVIL LAW TREATISE: PROPERTY, § 203 at 386 (4th ed. 2001) (footnote omitted).

In the listing agreement, LLR agreed to list for sale the Lenora Street property, of which Slayter professed to be the owner, for a set price. The listing agreement set the broker's commission at 4% of the gross sales price. Therein, Slayter represented that to the best of his knowledge, he was "the sole entit[y] having an ownership interest in the property." Slayter also agreed that he would "cooperate fully and not . . . obstruct the sale of the property during the term of this agreement." The listing agreement further provided that, upon Slayter's failure to pay the agreed-upon commission, he would "be responsible for all actual attorney fees and expenses" incurred in enforcing the agreement.

Clearly, the listing agreement bound Slayter personally, regardless of whether he owned the Lenora Street property. The property was simply the subject of the

agreement. Whether, as he now claims, he was not the actual owner of the property is of no moment to the resolution of this appeal. Given the fact that Slayter admitted that he had breached the listing agreement in both his July 18, 2006 letter to LLR and in his sale of the Lenora Street property during the set term of the listing agreement, the trial court did not err in granting summary judgment finding that he breached the listing agreement and in awarding LLR damages and attorney fees as a result of that breach. Moreover, because Slayter has not challenged the amount of damages and/or attorney fees awarded to LLR, the judgment will be affirmed in its entirety. Slayter's third and fourth assignments of error lack merit.

**DECREE**

For the foregoing reasons, the final judgment of the trial court in favor of the plaintiffs, Elaine Setliff and Louisiana Lagniappe Realty, LLC, and against the defendant, Aaron Slayter, awarding the plaintiffs damages of $14,800.00, plus judicial interest, court costs, and attorney fees of $3,612.15 is affirmed. All costs of this appeal are assessed against Aaron Slayter.

**AFFIRMED.**