# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 23, 2008

Charles R. Fulbruge III
Clerk

No. 07-30953

RUBENS MESA; JULIETA TARAZONA

Plaintiffs - Appellants

v.

DWAYNE PREJEAN, Individually and in his official capacity as a Lafayette City Police Officer

Defendant - Appellee

Appeal from the United States District Court
for the Western District of Louisiana

Before HIGGINBOTHAM, STEWART, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

This is a civil suit seeking damages against police officers for illegally and with excessive force arresting Plaintiffs Rubens Mesa and Julieta Tarazona. This appeal concerns the summary judgment granted in favor of one of the officers on the basis of qualified immunity. We affirm as to the claims brought by Mesa but reverse and remand in part the claims brought by Tarazona.

## I. Facts and Procedural Background

The Plaintiffs Rubens Mesa and Julieta Tarazona are married and own Guama's Restaurant and Bar in Lafayette, Louisiana. In the late-night hours

of April 8, 2005, one of the Defendants, Lafayette Police Officer Dwayne Prejean, was on duty patrolling an area near downtown where Guama's and many other bars were located. Patrons were in the businesses and on the sidewalks. Officer Prejean visited a few establishments to have owners move tables and chairs that were obstructing sidewalks in a manner that he believed to be violating state statute and local ordinance.

After stopping at Guama's, Officer Prejean walked across the street to another business. There, he arrested Tyler Guilbeau for disturbing the peace due to intoxication. Officer Prejean placed Guilbeau inside his police car and then stood next to the car while preparing paperwork on the arrest. Mesa approached Prejean while he was writing in order to discuss the tables and chairs on the sidewalk and to inquire about or object to Guilbeau's arrest.

Officer Prejean instructed Mesa to wait on the sidewalk. Mesa walked across the street to the opposite sidewalk. Tarazona arrived and heard Mesa's version of events. Tarazona and Guilbeau's girlfriend, an employee of Guama's, both walked over to Officer Prejean; Mesa remained on the sidewalk. Officer Prejean testified that when Tarazona first approached, he had already arrested Guilbeau and was in the process of writing up a misdemeanor summons to give to Guilbeau before releasing him. Tarazona asked Officer Prejean why Guilbeau was being arrested and about Prejean's earlier demand that Guama's chairs and tables be moved off the sidewalk.

At this point, the facts diverge as to Officer Prejean's initial response to Tarazona. Officer Prejean testified that he gave at least three clear orders for Tarazona to remove herself from the street. Tarazona asserts that Officer Prejean gave directions only twice. Moreover, the first was not an "imperative command" but an invitation to discuss the matter of the tables and chairs when he finished processing Guilbeau. Despite these assertions about the lack of urgency of Officer Prejean's initial directive, Tarazona's deposition testimony

2

confirms that (1) Officer Prejean "told" her twice to get out of the street and move on, and (2) she did not immediately comply with his initial directive. There is evidence, though disputed, that Tarazona crossed the street to the opposite sidewalk after the second request.

Upon reaching the sidewalk, Tarazona turned back toward Officer Prejean and made some comments in his direction. Officer Prejean testified that Tarazona began "yelling again about the media and she's going to call the Governor and have my job." Tarazona testified that she made a comment to the following effect: "If you didn't have that badge you wouldn't be treating me like that." After Tarazona made her comments, Officer Prejean immediately informed her that she was under arrest and started toward her.

When Officer Prejean approached Tarazona to place her under arrest, Mesa moved toward him in what Officer Prejean described as an "aggressive manner." At least two officers became involved physically with Mesa while detaining him. As a result, Mesa was bleeding and was taken to the hospital for examination. While Mesa was being restrained, Officer Prejean placed his hand on Tarazona's shoulder near her upper back and neck because he had already used his handcuffs on Guilbeau. Tarazona perceived the presence of Officer Prejean's hand as a requirement for her to kneel, and Tarazona knelt down. Tarazona testified that, while she thought this manner of arrest was unusual, Officer Prejean did not force her to the ground or otherwise inflict physical harm upon her. Still, she complains that she was injured by Officer Prejean's forcing her to watch the other officers beat her husband, Mesa. Tarazona was approximately eight feet away from the incident between Mesa and the other officers. Less than one minute passed between Tarazona's comments to Officer Prejean and the point at which both she and Mesa were detained.

Tarazona was charged with disturbing the peace by intoxication and with remaining after forbidden. Mesa was charged with resisting an officer, battery

of an officer, obstruction of a public passage, and disturbing the peace by intoxication. After a trial, a municipal court judge held that Mesa and Tarazona were not guilty of the charges.

Following the acquittals, Mesa and Tarazona brought this suit for violation of constitutional rights under 42 U.S.C. § 1983 and under Louisiana law for false arrest, false imprisonment, use of excessive force, defamation, and malicious prosecution.

Officer Prejean filed a motion for summary judgment, seeking dismissal of all of the claims brought against him. The district court granted the motion on the basis of qualified immunity. The court denied summary judgment motions by the other Defendant officers. The City of Lafayette received a partial summary judgment for matters related to prosecutorial immunity.

The court entered a Rule 54(b) judgment certifying the finality of the order favoring Officer Prejean. Mesa and Tarazona appeal from that judgment.

## II. Discussion

This court reviews a district court's grant of summary judgment de novo and evaluates the evidence as the district court would. XL Specialty Ins. Co. v. Kiewit Offshore Servs., Ltd., 513 F.3d 146, 149 (5th Cir. 2008). Summary judgment is appropriate when "there is no genuine issue as to any material fact, [and] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The issue of qualified immunity is a question of law, but in certain circumstances where "there remain disputed issues of material fact relative to immunity, the jury, properly instructed, may decide the question." Presley v. City of Benbrook, 4 F.3d 405, 410 (5th Cir. 1993).

When an officer argues that he is entitled to qualified immunity from suit, we first view the evidence "in the light most favorable to the party asserting the injury" and decide if "the facts alleged show the officer's conduct violated a constitutional right." Saucier v. Katz, 533 U.S. 194, 201 (2001). If that view

reveals no constitutional violation, there is no claim. However, "if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." Id. This second inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id. For immunity to apply, the "actions of the officer must be objectively reasonable under the circumstances, such that a reasonably competent officer would not have known his actions violated then-existing clearly established law." Evett v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force, 330 F.3d 681, 688 (5th Cir. 2003).

We apply these standards first to Tarazona's claims and then to Mesa's.

A. Tarazona's Fourth Amendment Claims

The validity of summary judgment on Tarazona's claims turns on whether Officer Prejean had "probable cause to believe that a criminal offense has been or is being committed." Devenpeck v. Alford, 543 U.S. 146, 152 (2004). "Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." United States v. McCowan, 469 F.3d 386, 390 (5th Cir. 2006). A mistake reasonably made as to probable cause justifies qualified immunity. Tarver v. City of Edna, 410 F.3d 745, 750 (5th Cir. 2005).

Two offenses were the alleged basis for the arrest: Tarazona's remaining after forbidden and her disturbing the peace by intoxication. We examine each offense in turn.

1. Remaining After Forbidden

Officer Prejean first argues that he had probable cause to arrest Tarazona under Louisiana's criminal trespass statute, which provides as follows:

> No person shall without authority go into or upon or attempt to go into or upon or remain in or upon any structure, watercraft, or any

> other movable or immovable property, which belongs to another, including public buildings or structures, ferries and bridges, or any part, portion, or area thereof, after having been forbidden to do so, either orally or in writing . . . by any owner, lessee, or custodian of the property or by any other authorized person.

La. Rev. Stat. § 14:63.3(A). The Louisiana Court of Appeal has held that this statute "does not prohibit standing on a public sidewalk." Melancon v. Trahan, 645 So. 2d 722, 726-27 (La. Ct. App.), writ denied, 650 So. 2d 1183 (La. 1995); see also State v. Brooks, 755 So. 2d 311, 313-14 (La. Ct. App. 1999). Though quite likely an officer has the right in Louisiana to require someone to move even from a sidewalk to avoid interfering with an arrest, the issue framed for us is whether refusing to do so violates this trespass statute. The state Supreme Court has not ruled on these points, but these precedents at least raise doubt that a sidewalk can be the situs for application of this specific statute.

There is some evidence that Tarazona was in the street, not on the sidewalk. This statute's applicability to public streets has not been the subject of any Louisiana court opinion. It may not criminalize every instance of remaining on a public street after being forbidden. See Melancon, 645 So. 2d at 726-27. Because the issue regarding the statute's applicability to kinds of locations has not been raised or briefed by the parties, and because resolution of the point is not dispositive on appeal, we leave this issue to be decided by the district court on remand after full presentation by the parties.

Regardless of the legal issue of whether an officer may expel an individual from a street or sidewalk, the violator must be given "a reasonable time to actually accomplish his departure." State v. Kology, 785 So. 2d 1045, 1048 (La. Ct. App. 2001). These disputed facts do not indicate whether Tarazona only briefly and reasonably hesitated after an initial request to move on. Further, if Tarazona's explanation is accepted that Officer Prejean at first used what would be a neighborhood policing technique of making a suggestion and not issuing a

6

command – though still "telling" her to move on – the resolution of disputed facts could be that she promptly moved at the first clear command.

The district court determined that Tarazona's failure to obey the first order to move gave Officer Prejean probable cause to arrest. See Murray v. Town of Mansura, 940 So. 2d 832 (La. Ct. App. 2006). The Murray court held that a town police chief had probable cause to arrest two individuals who did not leave the Mansura city hall premises after being given two warnings to move on. Id. at 835, 841-42. We do not find the answer in Murray. First, the violators in Murray refused to leave after being given two warnings and only departed from the premises after being told they were under arrest. Id. In contrast, there is some evidence that Tarazona complied with the one clear request and, arguably, moved within a reasonable time after Officer Prejean's first request. Second, the individuals who refused to leave city hall violated Section 14:63.3, as it applies to "public buildings and structures." Sidewalks and streets, though, may not be proper places for applying the statute as we have discussed.

Therefore, when viewing the evidence favorably to Tarazona, we conclude that there are fact questions about a violation of a constitutional right to be free from unreasonable seizures. See Saucier, 533 U.S. at 201. Because of that uncertainty, we must take the next sequential step in qualified immunity analysis and ask whether "a reasonably competent officer would not have known his actions violated then-existing clearly established law." Evett, 330 F.3d at 688. Here, too, the factual ambiguities regarding what Officer Prejean said and how many times he said it, how quickly Tarazona moved, and whether no reasonable officer would have thought he could arrest a person for her failure to move from a sidewalk, make summary judgment inappropriate.

We should not be read as failing to distinguish the two analytical steps. If there is no probable cause to arrest, the question of whether qualified immunity nonetheless applies is a separate legal and factual issue. In one

precedent, we reversed a decision regarding probable cause and remanded; on the next appeal, then-Chief Judge Clark wrote that whether a "search was reasonable is not the equivalent of whether an officer participating in an unreasonable search is entitled to qualified immunity." Bigford v. Taylor, 896 F.2d 972, 975 (5th Cir. 1990). We later examined the trilogy of Bigford appeals and concluded that the analysis of facts that might not support probable cause to arrest needs to be distinguished from the analysis of whether a reasonable officer would have known that he was violating clearly established law when making an arrest. Wren v. Towe, 130 F.3d 1154, 1160 (5th Cir. 1997). We find the facts relevant to each analysis sufficiently disputed to require reversal.

2. Disturbing the Peace by Intoxication

Even though Officer Prejean should not have been granted qualified immunity on summary judgment as to the first offense, we must examine the alternate basis for arrest due to disturbing the peace by intoxication. Probable cause to arrest for either offense gives immunity. Tarazona submitted sworn eyewitness statements that she was not intoxicated. Officer Prejean posits that Tarazona's actual intoxication is not dispositive in the probable cause inquiry.

The relevant statutory language for the offense is this:

A. Disturbing the peace is the doing of any of the following in such manner as would foreseeably disturb or alarm the public:
(3) Appearing in an intoxicated condition . . . .

La. Rev. Stat. § 14:103(A)(3). This crime requires that a "defendant was disturbing the peace by appearing drunk and in such a manner as would foreseeably disturb or alarm the public." State v. Trepagnier, 982 So. 2d 185, 191 (La. Ct. App. 2008). For a conviction, "the intoxication element is satisfied when the defendant is present 'while intoxicated, and not when he merely looks like he is intoxicated.'" Id. (quoting State v. Champagne, 520 So.2d 447, 451 (La. Ct. App. 1988)). That test does not answer what is needed for arrest.

Cases interpreting Section 14:103(A)(3) suggest that probable cause for an arrest for violating the statute requires that an officer observe evidence both of actual intoxication and a likelihood that the public will be endangered or disturbed. State v. Stowe, 635 So. 2d 168, 172 n.3 (La. 1994) (probable cause existed "based on defendant's offensive and derisive language in the middle of a public highway, plus his visibly intoxicated condition"); State v. Chauvin, 945 So. 2d 752, 761-62 (La. Ct. App. 2006) (no probable cause because no evidence of actual intoxication and no evidence "the defendant's actions had the intent to deride, offend or annoy the people he approached or that they were violent or boisterous in a manner that would induce a foreseeable physical disturbance").

The pertinent facts as to probable cause under Section 14:103(A)(3) are not well-developed in this record. Officer Prejean moved for summary judgment and argued that he had probable cause to arrest under each of the statutes we have discussed. The district court did not reach Officer Prejean's arguments on disturbing the peace by intoxication, finding the arrest under the criminal trespass statute to be justified. On appeal, Tarazona has disputed the existence of probable cause only by arguing she was not actually intoxicated. The appropriate inquiry, though, is whether the officer had probable cause to believe that she was. See Gibson v. Rich, 44 F.3d 274, 276-77 (5th Cir. 1995).

While Tarazona's evidence of her sobriety is not decisive on the probable cause issue, there also is little evidence that would support a finding that, based on Tarazona's conduct preceding her arrest, a reasonable person could conclude that she was violating the intoxication statute.[1]

---

[1] Under qualified immunity analysis, Tarazona bears the burden of proving that Officer Prejean lacked probable cause to arrest her. Sorenson v. Ferrie, 134 F.3d 325, 330 & n.10 (5th Cir. 1998). Tarazona "must show that the legality of her conduct was clearly established." Id. Her perceived intoxication is an alternative basis for arrest, and in response Tarazona did not demonstrate that the legality of her conduct was clearly established. We use our discretion not to affirm on that basis, never reached by the court below, because of the weakness of the offered evidence to suggest that this offense was a legitimate basis for arrest.

Even under our de novo review, the litigants must present this court with material facts before we can determine whether such facts are in dispute. The district court made no finding of fact regarding probable cause to arrest under Louisiana's disturbing the peace by intoxication statute. Office Prejean has shown little justification for the arrest, and Terazona has not shown an absence of justification. Under these circumstances, we decline the opportunity to affirm summary judgment on this alternative basis of probable cause. See U.S. ex rel. Riley v. St. Luke's Episcopal Hosp., 355 F.3d 370, 380 (5th Cir. 2004).

Because we have found that summary judgment based on qualified immunity should not have been granted under either alleged basis for the arrest, we reverse the dismissal of Tarazona's claim of an illegal arrest.[2]

3. Excessive Force

Tarazona alleged that Officer Prejean used excessive force when placing her under arrest. Tarazona admits that she suffered no physical injuries as a result of the arrest but argues that the arrest caused psychological injuries. Purely psychological injury can serve as a basis for liability under Section 1983. Tarver, 410 F.3d at 752. However, Tarazona's excessive force claim fails because the undisputed facts show that Officer Prejean's use of "force" was reasonable and not excessive under the circumstances. Indeed, Tarazona's own statements in the record indicate the pressure from the officer's hand on her shoulder that caused her to kneel down was minimal. There is no fact question here.

B. Tarazona's First Amendment Claim

Tarazona alleges that Officer Prejean violated her right to free speech by arresting her in response to her comment that he would be treating her and

---

[2] An arrest may be upheld if the circumstances viewed objectively created probable cause to arrest for a violation of some offense other than the one subjectively being considered at the time by the officer. Devenpeck, 543 U.S. at 153. Because no offense other than two we have considered is argued, we do not search for others.

Mesa differently if he "didn't have that badge." There are different versions of the comment, but we accept as true the language most favorable to Tarazona.

We apply the principle that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." Enlow v. Tishomingo County, 962 F.2d 501, 509 (5th Cir. 1992) (quoting City of Houston v. Hill, 482 U.S. 451, 462 (1987)). "The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." Id. (quoting Hill, 482 U.S. at 462-63). In Enlow, this court reversed the grant of summary judgment on the basis of qualified immunity where the facts were disputed whether an officer arrested the plaintiff because of violating a statute or because the plaintiff asked the officer to furnish a warrant. Id. at 510.

The district court here found that Tarazona's arrest was due to her refusal to leave. Based on this independent ground for arrest, the court found no merit to Tarazona's First Amendment claim.

Courts need to be alert to arrests that are prompted by constitutionally protected speech, even when the arrestee's words are directed at a police officer performing official tasks. Trained officers must exercise restraint when confronted with a citizen's anger over police action. Id. at 509; see also Lewis v. City of New Orleans, 415 U.S. 130, 134-35 (1974) (Powell, J., concurring).

Conversely, when a person's conduct gives an officer probable cause to believe that she is guilty of a crime, that person does not taint a proper arrest by contemporaneously shouting "police officers are corrupt." Probable cause is an objective standard. If it exists, any argument that the arrestee's speech as opposed to her criminal conduct was the motivation for her arrest must fail, no matter how clearly that speech may be protected by the First Amendment. Of course, this is nothing more than a recognition that "the Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain

11

circumstances, whatever the subjective intent" of the officer. Whren v. United States, 517 U.S. 806, 814 (1996).

Because the validity of Tarazona's First Amendment claim hinges on probable cause for her arrest – a fact question for the jury – we cannot resolve the speech claim on summary judgment. If Officer Prejean had probable cause to arrest Tarazona under Section 14:63.3, there can be no inquiry into whether he was subjectively motivated by her comments. In such an event, there could be no First Amendment violation. But if a jury finds no probable cause, Tarazona's First Amendment claim may be considered as well.

## C. Tarazona's State Law Claims

Tarazona also advanced a number state law claims, including false arrest, malicious prosecution, battery, false imprisonment, and defamation. The district court dismissed all of these state law claims because it found that Tarazona's arrest was both lawful and reasonable under the circumstances. Because we have found the district court's determination of probable cause to be in error, we reverse the court's dismissal of Tarazona's state law claims.

## D. Mesa's Fourth Amendment Claim

Mesa alleges that Officer Prejean violated his Fourth Amendment right to be free from unreasonable seizures by failing adequately to supervise the other officers who subdued and arrested him. Liability under Section 1983 for a supervisor may exist based either on "(1) his personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Thompkins v. Belt, 828 F.2d 298, 304 (5th Cir. 1987).

Though Officer Prejean never had physical contact with Mesa, it is argued that he was "personally involved" in Mesa's arrest because Prejean precipitated the arrest by falsely and unlawfully arresting Tarazona. Mesa does not offer any authority that would support this novel theory of liability as a form of "personal

involvement." We reject it because supervisory liability under the "personal involvement" theory requires something more than mere presence at the scene where subordinates allegedly violated the plaintiff's constitutional rights. The plaintiff must demonstrate an officer's "overt personal participation" in the violation of his own rights, not someone else's. Id. There is no allegation that Officer Prejean gave any command, signal, or any other form of direction to the officers that prompted them to arrest and subdue Mesa.

Absent Prejean's "overt personal participation" in the events giving rise to the claims, Mesa must demonstrate that "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." Estate of Davis v. City of N. Richland Hills, 406 F.3d 375, 381 (5th Cir. 2005) (internal quotation marks and citation omitted). Deliberate indifference is a "'conscious' choice to endanger constitutional rights." Snyder v. Trepagnier, 142 F.3d 791, 799 (5th Cir. 1998). "[P]roof of deliberate indifference generally requires a showing of more than a single instance of the lack of training or supervision causing a violation of constitutional rights." Burge v. St. Tammany Parish, 336 F.3d 363, 370 (5th Cir. 2003) (quotation marks omitted).

Mesa argues that Officer Prejean's failure to supervise the officers who arrested him caused the deprivation of Fourth Amendment rights. More specifically, Mesa contends that Officer Prejean is liable as a supervisor because he failed to intervene in the brief physical altercation between Mesa and the other officers, which he should have due to his senior rank and close proximity.

We review what admittedly occurred. Mesa characterizes his actions after Tarazona was arrested as raising "his forearms next to his side with the palms of his hands up in a questioning manner . . . ." This gesture then triggered two officers to subdue Mesa. Deposition testimony from witnesses and the parties

13

established that Mesa's arrest happened very quickly; the altercation between Mesa and other officers lasted approximately thirty to forty seconds. During this time, Officer Prejean was occupied with maintaining control over his own arrestee, Tarazona, whom he could not handcuff due to the fact that he had already employed his only set of handcuffs on Guilbeau.

Based on these facts, Officer Prejean's failure to intervene in Mesa's arrest does not amount to a conscious choice to endanger Mesa's constitutional rights. Further, Mesa has not made any attempt to show a pattern of similar "violations" by Officer Prejean. These omissions are fatal to his failure to supervise claim under Section 1983. See Rios v. City of Del Rio, 444 F.3d 417, 427 (5th Cir. 2006). We affirm the district court's summary judgment in favor of Officer Prejean as to Mesa's claims.

## III. Conclusion

The judgment dismissing Tarazona's federal claims is REVERSED AND REMANDED, with the exception that the judgment dismissing Tarazona's excessive force claim is AFFIRMED.

The judgment dismissing Tarazona's state law claims is REVERSED.

The judgment dismissing Mesa's claim is AFFIRMED.