# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 19, 2009

Charles R. Fulbruge III
Clerk

No. 08-30052

ASHTON R O'DWYER, JR

                                        Plaintiff-Appellee

v.

JOHN NELSON, Louisiana State Trooper;
CHRISTOPHER IVY, Louisiana State Trooper;
LOUISIANA STATE POLICE; CHARLES B PLATTSMIER, JR;
OFFICE OF THE DISCIPLINARY COUNSEL FOR THE LOUISIANA
SUPREME COURT; CATHERINE D KIMBALL

                                        Defendants-Appellants

---

Appeal from the United States District Court
Eastern District of Louisiana
USDC No. 2:06-CV-7280

---

Before REAVLEY, BARKSDALE, and GARZA, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellants Catherine D. Kimball ("Kimball"), John Nelson
("Nelson"), Christopher Ivy ("Ivy"), Louisiana State Police, Office of the
Disciplinary Counsel for the Louisiana Supreme Court ("ODC") and Charles B.
Plattsmier, Jr. ("Plattsmier") appeal the district court's denial of their motion to

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

dismiss claims made against them under 42 U.S.C. §1983 by Appellee Ashton O'Dwyer ("O'Dwyer"). Nelson, Ivy and the Louisiana State Police also appeal the denial of their motion to dismiss pendent state law claims. We REVERSE the district court as to the claims against Defendant-Appellants Kimball, Plattsmier, and the ODC; and REVERSE the district court as to the false arrest, excessive force and state law claims against Nelson, Ivy, and the Louisiana State Police.

## FACTS AND PROCEEDINGS

O'Dwyer's §1983 suit arises out of his arrest and incarceration for public intoxication in September of 2005, soon after Hurricane Katrina.[1]

In the aftermath of the hurricane, O'Dwyer made statements to the national news media regarding mandatory evacuations ordered by the mayor of New Orleans. The public statements he made were discussed at a meeting attended by, among others, Kimball, who is an Associate Justice of the Louisiana Supreme Court, and Plattsmier, who is Chief Disciplinary Counsel in the Louisiana Office of Disciplinary Counsel. At the meeting Kimball stated in reference to O'Dwyer: "Somebody has to shut that guy up; he's giving us all a bad name." In response, Plattsmier stated that he knew some of O'Dwyer's former law partners and would contact them to learn more about him.

Following this meeting, O'Dwyer was visited at his home by an "entourage" consisting of two other attendees of the meeting, including the then-president of the Louisiana Bar Association and an employee of the Louisiana Department of Justice. O'Dwyer was informed that complaints had been made about him "at the highest levels of government."

Three days later, O'Dwyer was sitting in his driveway drinking a glass of wine when a Louisiana State Police vehicle pulled up. O'Dwyer told the police

---

[1] Here, we set out the relevant facts pertaining to the arrest as alleged by O'Dwyer in his complaint.

troopers Nelson and Ivy that they were not authorized to be on his property. O'Dwyer claims that the police responded by telling him that he was coming with them, either voluntarily or by force. O'Dwyer stated that he would not resist, but that the police would have to remove him from his property by force; the police then attempted to enter his home but were prevented from doing so by a houseguest of O'Dwyer's. O'Dwyer alleges that the police then took him to a "temporary detention facility" where he was subjected to pepper spray and to being shot with "bean bag rounds" from a twelve-gauge shotgun; O'Dwyer claims he was then kept in a small cage for the next several hours. Upon his release, O'Dwyer was given an affidavit that listed the charge of public intoxication. O'Dwyer avers that he was not informed of the charge against him at any time before his incarceration, nor was he arraigned for the charge at any time following the events described.

O'Dwyer filed a §1983 suit in district court against various officials and offices of the State of Louisiana. All but the claims against Kimball, Ivy, Nelson and Plattsmeier were dismissed by the court below. The defendants filed an interlocutory appeal of the district court's denial of their motion to dismiss,[2] arguing that they are shielded from suit by the doctrine of qualified immunity.

## STANDARD OF REVIEW AND APPLICABLE LAW

We review *de novo* the district court's denial of a motion to dismiss under FED. R. CIV. P. 12(b)(6), "accepting all well-pleaded facts as true and viewing them in the light most favorable to the plaintiff." *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008)(internal citations omitted). In order to survive a motion to dismiss, a plaintiff's complaint must allege enough facts to state a claim that is plausible on its face. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir.2007).

---

[2] An interlocutory appeal of a district court's denial of a motion to dismiss on the basis of qualified immunity is permitted by *Mitchell v. Forsyth*, 472 U. S. 511, 527 (1985).

To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate first, a violation of the Constitution or of federal law; and second, that the violation was committed by someone acting under color of state law. *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252-53 (5th Cir. 2005)(internal citations omitted).

A defendant may plead qualified immunity as a defense from suit. Once a defendant properly invokes qualified immunity, the burden is on the plaintiff to show why the defense does not apply. *Id.* at 253. In evaluating the plaintiff's showing that qualified immunity is inapplicable, we ask whether the defendant's conduct violated a constitutional right and whether that right was clearly established at the time the alleged violation occurred.[3] *Mesa v. Prejean*, 543 F.3d 264, 269 (5th Cir. 2008). For immunity to attach, the "actions of the officer must be objectively reasonable under the circumstances, such that a reasonably competent officer would not have known his actions violated then-existing clearly established law." *Id.* (internal citations omitted).

ANALYSIS

1. *Catherine D. Kimball*

O'Dwyer claims that Kimball violated his constitutional rights by stating, at a meeting where several Louisiana state officials were present, that "[s]omebody has to shut [O'Dwyer] up; he's giving us all a bad name." O'Dwyer alleges that this statement led to actions by other state officers that culminated in his arrest and incarceration. The district court found that O'Dwyer had sufficiently alleged "the unusual sequence of events" for the purposes of overcoming a motion to dismiss.

---

[3] This two-prong inquiry was set out in *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Recently, the Supreme Court modified the holding in *Saucier* to state that the sequence of this inquiry is no longer mandatory, and that lower courts may use their discretion in deciding whether to apply the *Saucier* procedure. *Pearson v. Callahan*, --- S.Ct. ----, 2009 WL 128768 (Jan. 21, 2009).

The district court erred in denying the motion to dismiss. Section 1983 jurisprudence requires that a causal connection be shown between the officer's actions and the alleged violation of the plaintiff's constitutional rights. *See Reimer v. Smith*, 663 F.2d 1316, 1322 n.4 (5th Cir.1981) ("It is axiomatic that a plaintiff cannot succeed in a § 1983 action if he fails to demonstrate a causal connection between the state official's alleged wrongful action and his deprivation of life, liberty, or property.") O'Dwyer does not argue that Kimball's statement on its own violated his constitutional rights; rather, he states that it was part of a conspiracy to falsely arrest and imprison him. However, O'Dwyer's complaint does not allege the facts necessary to link Kimball's statement at the meeting to his arrest and incarceration nine days later. O'Dwyer claims that the statement led to the threatening visit at his home and ultimately to the actions of the state troopers; however, in the absence of any factual allegations that Kimball directed or was involved with O'Dwyer's arrest and imprisonment, the chain of events between her statement and the subsequent arrest/incarceration is simply too attenuated to support the inference of a causal connection. *See, e.g., Henzel v. Gerstein*, 608 F.2d 654, 658 (5th Cir. 1979)("Supervisory officials need not have participated personally in an act in order to be liable under § 1983 for the consequences of the act, but the plaintiff must show some causal connection between an act of the official and the alleged violation.") The absence of any causal connection also supports Kimball's defense of qualified immunity. Because the link between Kimball's statement and any possible constitutional violation is tenuous at best, Kimball cannot be said to have violated O'Dwyer's constitutional rights, clearly established or otherwise.

The district court also based its denial of Kimball's motion to dismiss on the fact that she "is alleged to have knowledge of the conditions of treatment allegedly received by the plaintiff after the arrest. . . ." However, no such

allegation appears on the face of O'Dwyer's complaint. The district court thus erred in premising its denial on facts not alleged in the plaintiff's complaint.

## 2. *Charles B. Plattsmier, Jr. and Office of Disciplinary Counsel*

The district court erred in denying Plattsmier's and the ODC's motion to dismiss for the same reasons stated above. Plattsmier's comment at the meeting that he would contact O'Dwyer's law partners in order to find out more about him is too far removed from the incident of arrest/incarceration, and thus any violation of O'Dwyer's constitutional rights, to state a claim under § 1983 or state law. Again, in the absence of any factual allegations that Plattsmier was directly involved in O'Dwyer's arrest and imprisonment and thus participated in a constitutional violation, the motion to dismiss should have been granted. As the basis of the claim against the ODC was its vicarious liability for Plattsmier's actions, dismissal of the claim against Plattsmier necessitates dismissal of the claims against ODC as well.

## 3. *John Nelson, Christopher Ivy and Louisiana State Police*

O'Dwyer alleges that Louisiana state troopers Nelson and Ivy violated his rights under the Fourth Amendment by committing a false arrest and by using excessive force to effectuate that arrest. Nelson and Ivy moved to dismiss, arguing that they are entitled to qualified immunity. The district court denied Nelson's and Ivy's motion. The district court previously denied the motion to dismiss filed by the Louisiana State Police as to O'Dwyer's state law claims, holding that the agency is subject to vicarious liability for the tortious conduct of its officers.

### a. False Arrest

Nelson and Ivy argue that their arrest of O'Dwyer was objectively reasonable and did not violate clearly-established Fourth Amendment law.[4] The

---

[4] O'Dwyer asserts both federal and state law claims for false arrest against the defendants. Because Fourth Amendment principles underpin Louisiana law relating to false

district court denied the motion to dismiss as it found that O'Dwyer had sufficiently pled the following facts supporting a Fourth Amendment violation: (1) he was arrested for public intoxication despite being within the confines of his property when he was arrested; (2) he was not advised of the basis of his arrest.

"[T]o prevail in a § 1983 claim for false arrest, a plaintiff must show that he was arrested without probable cause in violation of the Fourth Amendment." *Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007). As applied to the qualified immunity inquiry, the plaintiff must show that the officers could not have reasonably believed that they had probable cause to arrest the plaintiff for any crime. *See Devenpeck v. Alford,* 543 U.S. 146, 153 (2004); *see also Prejean*, 543 F.3d at 269 ("A mistake reasonably made as to probable cause justifies qualified immunity.")(internal citations omitted).

O'Dwyer was arrested under the CITY OF NEW ORLEANS MUN. CODE ORD. 54-405, which states:

> It is unlawful for any person to appear in a *public place* manifestly under the influence of alcohol, narcotics or other drugs, not therapeutically administered, to the degree that he may endanger himself or other persons or property. [Emphasis added]

The Municipal Code defines "public place" as:

> [A]n area generally visible to public view and includes streets, sidewalks, bridges, alleys, plazas, parks, *driveways*, parking lots, automobiles (whether moving or not), and buildings open to the general public including those which serve food or drink or provide entertainment, and the doorways and entrances to buildings or dwellings open to the public as well as the grounds enclosing them. [Emphasis added].

---

arrests, the Fourth Amendment inquiry here is applicable to both O'Dwyer's federal and state law claims. *See, e.g., Harrison v. State Through Dept. of Pub. Safety and Corr.*, 721 So.2d 458, 462-63 (La. 1998).

CITY OF NEW ORLEANS MUN. CODE ORD. 54-1.

Given that the definition of "public place" under 54-405 encapsulates driveways, and that O'Dwyer was sitting in his driveway when he was arrested by the police, we cannot say that it was objectively unreasonable for the police to believe that they had probable cause to arrest O'Dwyer for a crime. O'Dwyer concedes that alcohol was present, stating that he was having a "glass of wine" when the police pulled up to his driveway. Though O'Dwyer argues that he was not "manifestly under the influence of alcohol . . . to the degree that he may endanger himself or other persons or property" as 54-405 requires, he states in his complaint that he was verbally confrontational with the police officers. O'Dwyer's behavior *as set out in his complaint* could give rise to a reasonable belief on the part of the officers that he was a potential danger to persons or property. In any event, there is no "clearly-established" law that the officers' actions in this context violated the Fourth Amendment.

The district court also erred in finding that the fact that the police did not advise O'Dwyer of the basis of his arrest gave rise to a constitutional violation for the purposes of qualified immunity. The Fourth Amendment contains no requirement that an arresting officer advise the arrestee of the reason for his arrest. *See Devenpeck*, 543 U.S. at 155. Thus, because O'Dwyer does not state a claim for false arrest against Nelson and Ivy, the motion to dismiss O'Dwyer's federal and state law claims relating to false arrest should have been granted. Because Nelson's and Ivy's allegedly tortious conduct is the basis for the claim against the Louisiana State Police, the Louisiana State Police's motion to dismiss as to the false arrest claim should have been granted as well.

b.    Excessive Force

The district court found that O'Dwyer satisfied FED. R. CIV. P. 12(b)(6), and overcame defendants' assertion of qualified immunity, with respect to the claims

that Nelson and Ivy had (1) used excessive force in arresting O'Dwyer in violation of the Fourth Amendment and (2) committed battery under state law.

O'Dwyer's excessive force and state law claims fail, as he has not sufficiently alleged the requisite causal connection between Defendants Nelson and Ivy and the events of his arrest. In stating a § 1983 claim, the plaintiff is required to "identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999). Under the heightened pleading standard applicable to cases defended on qualified immunity grounds, the plaintiff must plead "with factual detail and particularity, not mere conclusory allegations." *Id.* (internal quotation marks omitted).

O'Dwyer does not allege with sufficient particularity or detail that Officers Nelson and Ivy were among the officers who arrested him. In his complaint, the only link he provides between the troopers and the arrest is the presence of Officer John Nelson's name and badge number on the affidavit he was given upon his release from detention. However, O'Dwyer does not state specifically that Officers Nelson and Ivy were among the arresting officers. Rather, his complaint states that:

> [D]efendants Nelson and Ivy had actual knowledge of the false pretext for plaintiff's being taken into police custody on September 20, 2005, and his being illegally detained, and tortured, thereafter, and did nothing to stop the travesty of justice with which the plaintiff was visited. One or both of them also rough-handled plaintiff at his home, which was totally unnecessary.

Fifth Circuit case law establishes that this does not rise to the level required to overcome the asserted defense of qualified immunity. *See, e.g.*, *Morin v. Caire*, 77 F.3d 116, 121 (5th Cir. 1996) (holding that Plaintiff did not state a claim where Plaintiff alleged that defendant "knew or should have

9

known" that the statements of defendant were false). O'Dwyer provides no factual allegations that Nelson and Ivy were directly or personally involved with the excessive force he claims was used during the course of his arrest. For this reason, O'Dwyer's excessive force claims and his ancillary state law battery claims should have been dismissed by the district court. Again, because the allegedly tortious conduct of the officers was the basis for the claims against the Louisiana State Police, all claims against the Louisiana State Police should have been dismissed as well.

For the foregoing reasons, we REVERSE the district court as to the claims against Defendant-Appellants Kimball, Plattsmier, and the ODC; and REVERSE the district court as to the false arrest, excessive force and state law claims against Nelson, Ivy, and the Louisiana State Police.