# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 29, 2023

Lyle W. Cayce
Clerk

No. 22-30572

———————

Lauren Larpenter; Kevin P. Larpenter,

*Plaintiffs—Appellants*,

*versus*

Nicholas Vera, *an individual*; Houma Police Department; Terrebonne Parish Consolidated Government; Terre Carnival Club, Incorporated; Houma-Terrebonne Civic Center,

*Defendants—Appellees*.

———————

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:21-CV-376

———————

Before Haynes and Engelhardt, *Circuit Judges*, and Saldaña, *District Judge*.[*]

Per Curiam:[†]

———————

[*] United States District Judge for the Southern District of Texas, sitting by designation.

[†] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-30572

Kevin and Lauren Larpenter[1] attended a Mardi Gras ball at a civic center where Nicholas Vera, an off-duty parole officer, was working as a private security guard. A violent confrontation ensued in which Vera dragged Kevin out of the building by his neck, seriously injuring him. The Larpenters sued Vera, the civic center, and several governmental entities, asserting that (1) Vera's conduct violated Kevin's Fourth Amendment rights and several state laws, and (2) Vera was liable to Lauren for loss of consortium and bystander damages. The district court granted summary judgment for Vera and dismissed all of the Larpenters' claims. They now appeal.

For the following reasons, we REVERSE the district court's entry of summary judgment as to Kevin's claims against Vera. We AFFIRM the district court's grant of summary judgment as to Lauren's claims and its dismissal of the Larpenters' remaining claims.

## I.    Background

### A. Facts

Many of the pertinent facts are disputed. But because this is an appeal from a grant of summary judgment, we consider the relevant events in the light most favorable to the nonmovants, the Larpenters. *See Deville v. Marcantel*, 567 F.3d 156, 163–64 (5th Cir. 2009) (per curiam). In February 2020, the Larpenters attended a Mardi Gras ball at the Houma-Terrebonne Civic Center ("Civic Center"). Vera, a parole officer with the Louisiana Department of Probation and Parole, was hired by the Civic Center to provide security for the event.

---

[1] We will refer to the plaintiffs as follows: Kevin Larpenter as "Kevin," and Lauren Larpenter as "Lauren."

By 1:00 a.m., most attendees had departed, and Kevin and a handful of remaining guests were cleaning up. As Kevin carried some decorations to his car, he noticed Vera screaming and cursing at a family. When Kevin approached, he heard Vera tell the group that if they did not "get the F--- out of the Civic Center[,] he [was] going to escort them out one by one." Vera then turned, pointed at Kevin, and asked, "who are you and what are you doing coming back in the Civic Center[?]" Kevin identified himself and told Vera he was in the process of gathering his belongings and going home. Vera responded that Kevin "need[ed] to go back where [he] came from," and if Kevin failed to do so, he was "going to escort [Kevin] out of the building." When Vera continued to yell at guests, Kevin asked Vera to stop speaking in such a hostile tone and repeated that he was trying to leave.

When Kevin turned around to pick up an item from one of the tables, he felt Vera grab him from behind. Vera then forcefully yanked Kevin's left hand at his wrist and "ripped it" to the back of his head. At the same time, Vera "jabbed" his right thumb into a pressure point on Kevin's neck and lifted him off of his feet. Per Kevin, Vera dragged him out of the Civic Center "off the ground by [his] neck" with his "arm strapped to the back of [his] head." Kevin's wife, Lauren, witnessed these events and followed Vera, screaming and hitting his head. Vera finally released Kevin outside the Civic Center, and the Larpenters immediately drove home. Kevin was never arrested or charged, and no incident report was filed. As a result of the encounter, Kevin claims he sustained painful injuries to his neck, shoulder, and arm which interfere with his daily activities.

Vera, for his part, concedes he employed a "transport wrist lock"—a maneuver he learned at a prior job—on Kevin and forcibly dragged him out of the Civic Center. He further admits that while Civic Center management instructed him to clear out the building, he never received authorization to *physically remove* anyone. However, Vera nonetheless asserts his actions were

warranted. Despite Kevin's contentions to the contrary, Vera claims he believed Kevin was intoxicated, behaving disrespectfully, and was non-compliant (though never violent) when asked to leave.

## B. Procedural History

Kevin subsequently sued Vera, asserting Fourth Amendment claims for false arrest and excessive force under 42 U.S.C. § 1983 and state law assault, battery, and negligence claims. Lauren brought separate claims for bystander and loss of consortium damages. Additionally, the Larpenters sued the Terrebonne Parish Consolidated Government, the Houma Police Department, and the Civic Center and its indemnitor, Terre Carnival Club, asserting claims for vicarious liability and failure to train.[2]

Vera moved for summary judgment as to both Larpenters. The district court granted each of these motions, concluding that (1) qualified immunity barred Kevin's federal claims, (2) discretionary immunity barred Kevin's state law claims, and (3) Lauren had failed to raise a genuine issue of material fact as to her entitlement to bystander and loss of consortium damages. Additionally, though Vera alone moved for summary judgment, the court also sua sponte dismissed the Larpenters' claims against the remaining defendants in the same order. The Larpenters timely appealed.

## II.    Standard of Review

The district court properly exercised jurisdiction over Kevin's federal law claims under 28 U.S.C. § 1331. It had supplemental jurisdiction over the Larpenters' state law claims under 28 U.S.C. § 1367(a). We have appellate jurisdiction under 28 U.S.C. § 1291.

---

[2] The Larpenters also sued the State of Louisiana and Vera in his official capacity, but these claims were ultimately voluntarily dismissed.

We review the district court's entry of summary judgment based on both qualified immunity and state law immunity de novo. *Griggs v. Brewer*, 841 F.3d 308, 311 (5th Cir. 2016); *see also Addington v. Wells*, No. 22-30220, 2023 WL 2808466, at *5 (5th Cir. Apr. 6, 2023) (per curiam) (unpublished). In conducting this review, we must "view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Deville*, 567 F.3d at 163–64. Summary judgment is proper where there are no genuine issues of material fact and the movant is entitled to prevail as a matter of law. *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017) (citing Fed. R. Civ. P. 56(a)).

## III.    Discussion

On appeal, the Larpenters challenge the district court's conclusions that (1) Vera was entitled to qualified immunity on Kevin's false arrest and excessive force claims; (2) Vera was entitled to discretionary immunity on Kevin's state law claims; and (3) Lauren failed to submit sufficient evidence to raise a fact issue as to her entitlement to bystander and loss of consortium damages. We consider each issue in turn.

### A. § 1983 Claims and Qualified Immunity

#### 1.    "Under Color of State Law" Analysis

At the outset, we address whether Vera—who committed the challenged conduct in his capacity as an off-duty, private security guard— was acting "under color of state law." Though neither party raised this issue in their briefing, it is a prerequisite for asserting a § 1983 claim. *See West v. Atkins*, 487 U.S. 42, 48 (1988) ("*To state a claim* under § 1983, a plaintiff must . . . show that the alleged deprivation was committed by a person acting under color of state law." (emphasis added)). We therefore consider it here.

No. 22-30572

To conduct this inquiry, we ask: "(1) whether the officer misuse[d] or abuse[d] his official power, and (2) if there is a nexus between the victim, the improper conduct, and [the officer's] performance of official duties." *See Bustos v. Martini Club Inc.*, 599 F.3d 458, 464–65 (5th Cir. 2010) (alterations in original) (quotation omitted). A defendant's "on- or off-duty status at the time of the alleged violation" is not dispositive. *Id.* at 464. In the past, we have deemed relevant whether the defendant: (1) was in uniform, *id.* at 465, (2) "used an official weapon or threatened [the plaintiff] by asserting his [official] authority," *id.*, or (3) otherwise "acted like [a] police officer[]" or demonstrated an "air of authority," *see Gomez v. Galman*, 18 F.4th 769, 776–77 (5th Cir. 2021) (per curiam) (quotation omitted).

In light of these criteria, we conclude Vera acted "under color of state law." Based on the undisputed facts, Vera displayed all of the hallmarks of a law enforcement official. During the encounter, he was wearing his official "probation and parole" uniform, gave guests "lawful" commands, and employed a maneuver on Kevin that he learned in previous police training. Accordingly, because "[t]he presence of police and the air of official authority pervaded the entire incident," Vera is a proper defendant under § 1983. *See United States v. Tarpley*, 945 F.2d 806, 809 (5th Cir. 1991).

## 2.    Qualified Immunity Framework

Next, we consider whether Vera is entitled to qualified immunity on Kevin's § 1983 claims. To make this determination, we ask two questions: (1) whether Vera's "conduct violated a constitutional right," and (2) "whether the right was clearly established." *Cunningham v. Castloo*, 983

6

F.3d 185, 190–91 (5th Cir. 2020) (internal quotation marks and citation omitted).[3]

Before we proceed to the merits, we first note two defects in the district court's application of this test.  First, the district court considered Kevin's Fourth Amendment claims together.  But because excessive force and false arrest are distinct constitutional violations, we must consider these claims separately.  *See Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007). Second, at certain points, the district court seemed to credit Vera's version of disputed facts.[4]  But this contradicts the well-established rule that, when deciding a motion for summary judgment, courts must "resolve factual controversies in favor of the nonmoving party." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam).  We take no position on whether these errors are grounds for reversal in themselves.  However, they are notable in that they likely negatively impacted the district court's analysis of the merits, which—as discussed below—we disagree with.

### 3.     False Arrest

With the proper framework in mind, we turn to Kevin's false arrest claim.  The Fourth Amendment bars unreasonable seizures of both property *and* people.  *California v. Hodari D.*, 499 U.S. 621, 624 (1991).  The Supreme

---

[3] In their reply brief, the Larpenters contend that Vera's status as an off-duty private security detail renders him ineligible for qualified immunity.  Because we ultimately conclude that Vera was not entitled to summary judgment on the basis of qualified immunity, we need not reach this issue here.  However, we stress that, regardless of how the factual disputes are resolved on remand, Vera cannot prove his entitlement to qualified immunity unless he demonstrates that his challenged conduct "was within the scope of his discretionary authority" according to state law. *Sweetin v. City of Tex. City*, 48 F.4th 387, 392 (5th Cir. 2022) (quotation omitted).

[4] For example, the court (1) assumed that Kevin and the other guests declined to leave after Vera asked them to, and (2) asserted that Kevin "both talked back to and turned his back to Vera after being told to leave."

Court has defined an arrest—a type of Fourth Amendment seizure—as "application of force to the body of a person with intent to restrain." *Torres v. Madrid*, 141 S. Ct. 989, 995, 996 (2021). For purposes of a § 1983 false arrest claim, it is irrelevant whether the suspect is ultimately released.[5] *See id.* at 994, 995. Given that it is undisputed that Vera forcefully placed Kevin's arm behind his back and removed him from the Civic Center, there's no question Kevin was seized. The central inquiry, then, is whether this seizure was objectively reasonable.

The standard for making this determination is well-settled. For this type of forceful seizure to be reasonable, it must be based on probable cause. *See Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 208 (5th Cir. 2009). Accordingly, in the qualified immunity context, Kevin must raise genuine issues of material fact as to whether Vera (1) lacked probable cause to believe Kevin was engaging in criminal activity, *and* (2) was "objectively unreasonable in *believing*" such probable cause existed. *Bey v. Prator*, 53 F.4th 854, 858 (5th Cir. 2022) (per curiam) (emphasis added) (quotation omitted).

While the district court seemed to concede that Vera lacked probable cause, it determined that the aforementioned framework does not apply in this case. In its view, because Vera was working as the security detail for a private event, he could have reasonably believed he did not *need* probable cause to seize Kevin. In reaching this conclusion, the court relied on *Heaney v. Roberts*, 846 F.3d 795 (5th Cir. 2017), which held that an off-duty officer

---

[5] Vera contends that because Kevin was never charged or formally detained, his claim for false arrest necessarily fails. We disagree. Under Supreme Court precedent, apprehension of an individual with an "intent to restrain" triggers the Fourth Amendment, regardless of whether the suspect is ultimately charged or even subdued. *See Torres*, 141 S. Ct. at 994 ("The application of physical force to the body of a person with intent to restrain is a seizure, *even if the force does not succeed in subduing the person*." (emphasis added)).

providing security at a city council meeting acted reasonably when he removed a disruptive individual—despite lacking probable cause. *Id.* at 798, 805.

But the district court plainly misreads our precedent. *Heaney* does not authorize off-duty officers to violently seize individuals without any suspicion they have violated the law. Indeed, this interpretation would directly contravene well-established Supreme Court precedent and Louisiana law—both of which make plain that even brief, non-intrusive seizures must be justified by, at minimum, "reasonable cause" or "reasonable suspicion" that criminal activity has occurred. *See, e.g.*, *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (even a "brief, investigatory stop" must be supported by reasonable suspicion); *Maryland v. Pringle*, 540 U.S. 366, 370 (2003) (arrests must be supported by probable cause); *see also* LA. CODE CRIM. PROC. art. 213(A)(3) (warrantless arrests must be supported by, at minimum, "reasonable cause" that a criminal offense has been committed). Rather, at most *Heaney* holds that, in very limited circumstances, an officer may reasonably believe that a particular method of removing an individual would fall short of a *seizure*—and therefore would not trigger the Fourth Amendment at all.

However, such a belief would be entirely unreasonable here. In *Heaney*, the plaintiff alleged that the defendant-officer "shoved" and "ejected" him out of a city council meeting and then "escorted" him down a flight of stairs—where the plaintiff then freely walked out of the building. 846 F.3d at 799, 806. The plaintiff never suggested he was physically "restrained," *id.* at 805–06—a key characteristic of a Fourth Amendment seizure under Supreme Court precedent. *See Hodari D.*, 499 U.S. at 626 (defining a seizure, in this context, as "a laying on of hands or application of physical force to restrain movement"). Here, however, there's simply no debate that Vera forcibly and violently restrained—and thus seized—Kevin.

Moreover, the defendant-officer in *Heaney* acted at the behest of a government official's explicit directive.  846 F.3d at 799.  But in this case, it is undisputed that Vera lacked *any* prior authorization to use physical force.  Accordingly, we decline to adopt the district court's expansive reading of *Heaney*.  In order to establish his qualified immunity defense, Vera must show that he reasonably believed he had probable cause to seize Kevin.

On Kevin's version of the facts, there is at least a fact issue as to whether Vera made this showing.  Vera contends that he had probable cause to believe Kevin was violating two Louisiana state laws.  First, he urges that Kevin's conduct contravened Louisiana's prohibition on disturbing the peace by appearing intoxicated.  *See* LA. R.S. § 14:103(A)(3).  However, Kevin testified that he was sober and polite at the time of the encounter, and several guests corroborated this account.  Therefore, there is a genuine issue of material fact as to whether Vera could have reasonably believed that Kevin was—or even appeared to be—"foreseeably disturb[ing] or alarm[ing] the public" by "[a]ppearing in an intoxicated condition." *Id.*

Second, Vera contends he reasonably believed Kevin was violating Louisiana's prohibition on "remaining after forbidden" by lingering in the Civic Center after being asked to depart.  *See* LA. R.S. § 14:63.3(A).  However, Kevin testified he was doing the exact opposite prior to the encounter.  Per Kevin, when Vera confronted him, he was attempting to collect his belongings *so he could leave* the facility.  We have previously held that officials may not properly expel an individual pursuant to § 14:63.3(A) without providing him with "a reasonable time to actually accomplish his departure." *Mesa v. Prejean*, 543 F.3d 264, 269 (5th Cir. 2008) (overruled on other grounds) (quoting *State v. Kology*, 785 So. 2d 1045, 1048 (La. Ct. App. 2001)).  Accordingly, to the extent Vera assumed Kevin was breaking Louisiana law by gathering his personal effects as he exited the Civic Center, that belief was plainly unreasonable.  Therefore, Kevin has raised a genuine

issue of material fact as to whether Vera's conduct constituted an unconstitutional false arrest.

We now turn to the second prong of the qualified immunity analysis, which requires Kevin to show that this constitutional violation was "clearly established at the time of [Vera's] challenged conduct." *Plumhoff v. Rickard*, 572 U.S. 765, 778 (5th Cir. 2014) (internal quotation marks and citation omitted). A right is clearly established if it "is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (quotation omitted). In determining whether this prong is met, we may consider any "controlling authority" or a robust "consensus of cases of persuasive authority." *Wilson v. Layne*, 526 U.S. 603, 617 (1999). Because the clearly established law inquiry is a legal question reviewed de novo, we are not bound to considering only the cases cited in Kevin's briefing. *See Elder v. Holloway*, 510 U.S. 510, 516 (1994). Rather, we may rely on our "full knowledge of [our] own [and other relevant] precedents." *Id.* (second alteration in original) (quotation omitted).

Kevin has also satisfied this prong. First, as discussed, both the Supreme Court's and this court's precedent are abundantly clear that forceful seizures must be supported by probable cause. *See, e.g.*, *Pringle*, 540 U.S. at 370; *Club Retro*, 568 F.3d at 191–92, 197, 203 (concluding that officers violated the Fourth Amendment when they lacked probable cause to remove three individuals from a nightclub during a raid). Second, *Mesa*—a highly factually similar case—solidifies that the requisite probable cause was missing here. 543 F.3d at 272. *Mesa* involved an encounter in which a police officer detained the plaintiff after she did not immediately comply with his request to move out of a public street. *Id.* at 268. The plaintiff sued the officer for false arrest under § 1983. *Id.* The officer, in turn, asserted qualified immunity on the grounds that he reasonably believed he had

probable cause to arrest the plaintiff for violations of the *same* Louisiana statutes at issue here. *Id.* We denied the officer's motion for summary judgment, concluding that genuine issues of material fact existed as to "what [the officer] said and how many times he said it, how quickly [the plaintiff] moved, and whether no reasonable officer would have thought he could arrest a person for her failure to move from a sidewalk." *Id.* at 271. Similar factual disputes exist here. As a result, Kevin has raised genuine issues of material fact as to both prongs of the qualified immunity analysis, and therefore Vera is not entitled to summary judgment on Kevin's false arrest claim.

### 4.    Excessive Force

We now consider Kevin's excessive force claim. To establish that an officer used excessive force, a plaintiff must show that he "suffer[ed] an injury that result[ed] directly and only from a clearly excessive and objectively unreasonable use of force." *Joseph ex. rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 332 (5th Cir. 2020). There's no dispute that Kevin was seriously injured by Vera's conduct. Therefore, the only issue is whether Vera's use of force was reasonable. Several factors guide this inquiry, including "(1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Graham v. O'Connor*, 490 U.S. 386, 396 (1989)). Accordingly, "[w]here a suspect committed no crime, posed no threat to anyone's safety, and did not resist the officers or fail to comply with a command," any injurious use of force is suspect. *Johnson v. Hollins*, 716 F. App'x 248, 253 (5th Cir. 2017) (per curiam) (internal quotation marks and citation omitted); *cf. Newman v. Guedry*, 703 F.3d 757, 764 (5th Cir. 2012).

Construing all factual disputes in Kevin's favor, these principles dictate that Vera's use of force was unwarranted. First, as discussed, there's a fact issue as to whether Vera could have reasonably believed Kevin was even violating the law. Second, on Kevin's facts, he was sober, polite, and therefore posed no threat to Vera's safety. Finally, Kevin testified he was complying with Vera's requests, and it is undisputed that Kevin did not resist when Vera apprehended him. Accordingly, it is questionable whether *any* use of force was justified—but certainly not the degree employed by Vera. Therefore, all three *Graham* factors squarely indicate that Vera's use of force was excessive.

Additionally, based on Kevin's version of the facts, Vera's use of force likely violated clearly-established law. Vera's actions were so disproportionate to the threat Kevin posed that this approaches an "obvious" case. *See Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam) (noting that "in an obvious case," general standards can "clearly establish" a right, "even without a body of relevant case law"). Regardless, however, numerous Fifth Circuit precedents make plain that such injurious, violent force is a plainly excessive response to disrespectful behavior and other passive resistance. *See, e.g.*, *Hanks v. Rogers*, 853 F.3d 738, 742, 745–47 (5th Cir. 2017) (explaining defendant officer's rapid resort to force at a traffic stop was unwarranted when the plaintiff only demonstrated passive resistance—that is, disrespectful comments and a "small lateral step"); *Trammell v. Fruge*, 868 F.3d 332, 337, 340–43 (5th Cir. 2017) (concluding officers violated clearly established law by placing plaintiff suspected of committing a minor offense in a headlock when he did not attempt to flee and merely "pulled away"); *Deville*, 567 F.3d at 167–69 (determining that use of force on individual stopped for a traffic violation was unwarranted when plaintiff only passively resisted arrest); *Newman*, 703 F.3d at 762–63 (concluding pushing plaintiff onto a car and striking him was unwarranted

when plaintiff did not pose a threat to officers, did not attempt to flee, and at most passively resisted arrest).

Therefore, Vera is not entitled to summary judgment based on qualified immunity on either of Kevin's § 1983 claims. Should the case proceed to trial, the factfinder can reassess whether the defense applies.[6]

## B. State Law Claims and Discretionary Immunity

Next, we address whether Vera is entitled to discretionary immunity as to Kevin's state law claims.[7] Under Louisiana law, state public officials are presumptively entitled to immunity from liability stemming from "discretionary acts" that are "within the course and scope of their lawful powers and duties." LA. R.S. § 9:2798.1(B); *see also Dominique v. Parish*, 313 So. 3d 307, 316 (La. Ct. App. 2020) (noting that Louisiana law assumes that officers exercise their discretionary authority reasonably). To rebut that presumption, Kevin must raise a genuine issue of material fact as to whether Vera's actions constituted "criminal, fraudulent, malicious, intentional,

---

[6] For instance, the Fifth Circuit Pattern Jury Instruction for the qualified immunity defense provides:

> As to each claim for which Plaintiff [name] has proved each essential element, you must consider whether Defendant [name] is entitled to what the law calls "qualified immunity" . . . . Qualified immunity applies if a reasonable [officer/official] could have believed that [specify the disputed act, such as the arrest or the search] was lawful in light of clearly established law and the information Defendant [name] possessed.

Fifth Circuit Pattern Jury Instructions (Civil Cases) § 10.3 (2020).

[7] Vera argues that Kevin abandoned this argument on appeal by failing to provide any "legal analysis of why the district court erred in dismissing these claims." But in determining Vera was entitled to discretionary immunity, the district court relied almost entirely on its prior reasoning pertaining to Kevin's § 1983 claims. Accordingly, it was reasonable for Kevin, too, to assume we would apply his § 1983 arguments to our consideration of his state law claims. Therefore, we conclude this point of error is preserved.

No. 22-30572

willful, outrageous, reckless, or flagrant misconduct." LA. R.S. § 9:2798.1(C)(2); *see, e.g.*, *Rombach v. Culpepper*, No. 20-30554, 2021 WL 2944809, at *1, *9 (5th Cir. 2021) (per curiam). For the reasons discussed above, we conclude that Kevin has made this showing. Accepting Kevin's version of events, there is at least a fact issue as to whether the unprovoked, injurious, and forceful nature of Vera's conduct evinced "a callous indifference to the risk of potential harm." *Mariana v. Magnolia Auto Transport, LLC*, 341 So. 3d 1281, 1291 (La. Ct. App. 2022). Therefore, Vera was also not entitled to summary judgment on Kevin's state law claims.

## C. Remaining Claims

Finally, we consider Lauren's claims and the claims against the remaining Defendants. Lauren asserts the district court erred in granting Vera's motion for summary judgment as to her claims for bystander and loss of consortium damages. But while Lauren's briefing discusses relevant legal principles, she wholly failed to challenge the district court's reasoning or to cite to any additional evidence in the record supporting her claims. Therefore, she has abandoned these claims on appeal. *See Yohey v. Collins*, 985 F.2d 222, 224–25 (5th Cir. 1993).

Along the same lines, we note that the Larpenters forfeited any challenge to the district court's sua sponte dismissal of their claims against the other Defendants. Their briefing does not so much as mention their claims against the Parish and the Houma Police Department, and they failed to address the dismissal of their claims against the Civic Center and its indemnitor until their reply brief. Therefore, they have also forfeited any claim to error relevant to the district court's disposition of these claims. *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021); *Lockett v. EPA*, 319 F.3d 678, 684 n.16 (5th Cir. 2003).

## IV.    Conclusion

For these reasons, we REVERSE the district court's entry of summary judgment as to Kevin's § 1983 and state law claims, and we REMAND to the district court for further proceedings. We AFFIRM the district court's entry of summary judgment as to Lauren's claims and its dismissal of the Larpenters' claims against the remaining Defendants.