# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 1, 2010

No. 09-31100

Lyle W. Cayce
Clerk

RICKEY CARTHON,

Plaintiff-Appellant,

v.

STEVE PRATOR, Individually and in his official capacity as Sheriff of Caddo
Parish; ROBERT MONTOYA, Individually and is his official capacity as
deputy sheriff of Caddo Parish; VICTOR BORDELON, Individually and in his
official capacity as deputy sheriff of Caddo Parish; WADE JACOBS,
Individually and in his official capacity as deputy sheriff of Caddo Parish;
ADAM JACOBO, Individually and in his official capacity as deputy sheriff of
Caddo Parish; CALVARY BAPTIST CHURCH OF SHREVEPORT
LOUISIANA,

Defendants-Appellees.

Appeals from the United States District Court
for the Western District of Lousiana
5:08-cv-01238

Before DeMOSS, BENAVIDES, and ELROD, Circuit Judges.

PER CURIAM:[*]

Rickey Carthon appeals the district court's summary judgment on his

false-arrest claims.  He argues that the arresting officers are not entitled to

---

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5th Cir.
R. 47.5.4.

No. 09-31100

qualified immunity for their decision to arrest him, and that Calvary Baptist Church is vicariously liable as the officers' employer. Because Carthon has failed to bring forth evidence to demonstrate that the officers lacked probable cause for his arrest, we AFFIRM.

I.

We present the facts of the case in the light most favorable to Carthon, the nonmoving party. On November 2, 2007, Carthon attended a high school football game at a stadium owned by Calvary Baptist Church, where a number of off-duty local law enforcement officers were providing security. The turnout at the game greatly exceeded the stadium's seating capacity. As a result, many fans had to stand at the fences in front of the bleachers. Unable to find a seat, Carthon was watching the game from an aisle in the seating area. Because having fans blocking the aisles poses a fire hazard, Deputy Montoya instructed Carthon to move. Rather than move, Carthon replied, "Officer, if you can show me a place to sit, I would gladly sit there." Carthon then asked Deputy Montoya to assist him in obtaining a refund for his ticket because there was no place for him to watch the game. Deputy Montoya responded that this was not his responsibility and insisted that Carthon clear the aisle.

Although Carthon finally acquiesced, he continued to make his displeasure known. At some point later in the game, he approached Deputy Montoya and began staring at him from several feet away. Deputy Montoya asked him numerous times to move along and enjoy the game. Deputy Jacobs, who was nearby, testified that Deputy Montoya was "just short of begging [Carthon] to move on, to let it go." Unmoved, Carthon continued to "stand there in a dead stare." Deputy Jacobs attempted to intervene, telling Carthon, "You need to move on." Carthon completely ignored Deputy Jacobs, continuing to stare unresponsively at Deputy Montoya.

No. 09-31100

Deputy Jacobs then told Carthon that he had lost his chance to enjoy the game, and ordered him to leave the premises immediately. Carthon kept staring at Deputy Montoya, just as before. Seeing no change in Carthon's behavior or any indication that he would eventually comply, Deputy Jacobs arrested him several seconds later.

Carthon sued the defendants in federal court, asserting state and federal claims for false arrest, among other things.[1] Carthon claimed that Calvary Baptist Church employed the officers and, therefore, was vicariously liable for the their actions. The district court concluded that the officers are entitled to qualified immunity and that, because Carthon's rights were not violated, Calvary Baptist Church could not be held vicariously liable. The district court therefore granted defendants' motions for summary judgment. Carthon timely appealed.

## II.

We review a district court's summary judgment *de novo*. *Rivers v. Cent. & S.W. Corp.*, 186 F.3d 681, 683 (5th Cir. 1999). Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Breaux v. Halliburton Energy Servs.*, 562 F.3d 358, 364 (5th Cir. 2009). We take all the facts and evidence in the light most favorable to Carthon, the nonmoving party. *Id.*

Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009). Thus, in order to decide

---

[1] Although Carthon raised other claims in the district court, his appeal does not challenge the dismissal of those claims.

whether a defendant is entitled to qualified immunity, the court considers whether the "officer's conduct violated a constitutional right," as well as "whether the right was clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). A government official is "entitled to qualified immunity if his or her conduct was objectively reasonable in light of the legal rules that were clearly established at the time of his or her actions," even if the conduct violated the plaintiff's constitutional right. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc). Once a government official invokes qualified immunity, the plaintiff bears the burden of showing that the defense does not apply. *Id.*

The Fourth Amendment right to be free from arrest without probable cause has long been clearly established.[2] *See Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 206 (5th Cir. 2009). "Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *United States v. McCowan*, 469 F.3d 386, 390 (5th Cir. 2006). An arresting officer who "reasonably but mistakenly concludes" that probable cause exists is entitled to qualified immunity for the arrest. *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005). Thus, in order to overcome the defense of qualified immunity, the plaintiff must demonstrate that the officer "lacked arguable (that is, reasonable but mistaken) probable cause" for the arrest. *Club Retro*, 568 F.3d at 207.

In this case, the officers assert that they had probable cause to arrest Carthon for, among other things, the offense of entering and remaining after being forbidden. Louisiana law provides that "[n]o person shall without authority go into or upon or remain in or upon . . . any . . . immovable property,

---

[2] Carthon concedes that the same standard applies to his false arrest claims under both state and federal law.

which belongs to another, . . . or any part, portion, or area thereof, after having been forbidden to do so, either orally or in writing, . . . by any other authorized person." La. Rev. Stat. § 14:63.3(A). In reviewing a conviction under the statute, the Court of Appeal of Lousiana decided that "a defendant must be accorded a reasonable time to actually accomplish his departure." *State v. Kology*, 785 So. 2d 1045, 1048 (La. App. 3d Cir. 2001). At the same time, the court recognized that "the statute would lose its force altogether if a demand or request to leave need not be met with expedition." *Id.* at 1049.

Carthon argues that the officers did not afford him a reasonable opportunity to comply with their order to leave. According to Carthon, "momentary and reasonable hesitation" following an order to leave does not amount to probable cause for the offense of entering and remaining after being forbidden. We agree that momentary and reasonable hesitation, standing alone, might not constitute probable cause. The facts of this case present no such situation, however.

Although only seconds elapsed between Deputy Jacobs's order to leave and Carthon's arrest, those seconds cannot be considered in a vacuum. Rather, the probable-cause analysis focuses on the "totality of the facts and circumstances within a police officer's knowledge at the moment of arrest." *McCowan*, 469 F.3d at 390. Deputy Montoya repeatedly requested that Carthon move along and enjoy the game, but instead, Carthon merely stared at him and refused to respond or acknowledge the requests. This behavior continued when Deputy Jacobs asked Carthon to move along: Carthon just ignored him while still staring at Deputy Montoya. In the seconds after Deputy Jacobs commanded that Carthon leave the premises, nothing changed. Carthon, still staring, did not change his behavior. Nothing about his conduct suggested that the order to leave would alter this pattern of ignoring the officers' directions and staring at Deputy Montoya. Under these circumstances, a reasonable person could

conclude that Carthon was committing the offense of entering and remaining after being forbidden.  Probable cause requires nothing more.

Carthon's reliance on *Kology* is unavailing.  As an initial matter, the court in *Kology* was reviewing the sufficiency of the evidence for a conviction, not a determination of probable cause.  *Kology*, 785 So. 2d at 1047.  Thus, the court was evaluating whether a reasonable factfinder "could have found the essential elements of the crime proven beyond a reasonable doubt."  *Id.*  Proof beyond a reasonable doubt is not required for probable cause, which deals with on-the-spot decision-making by reasonable officers considering the totality of the circumstances.  Even leaving aside the differing levels of certainty required, however, the facts here are markedly different from those in *Kology*.  As the court emphasized, Kology's delay "was not recalcitrance because manifestly it was not inconsistent with a willingness to comply with the request that he leave."  Here, by contrast, Carthon established a pattern of disregarding the officers' requests, which led them to believe that his delay was a continuation of that pattern—a pattern that was manifestly inconsistent with a willingness to comply with their requests.

Similarly, this court's decision in *Mesa v. Prejean*, 343 F.3d 264 (5th Cir. 2008) is inapposite.  Although the court was faced with the issue of whether probable cause existed for an arrest under the same statute, it ultimately held that summary judgment was inappropriate, in part, because of disputed fact issues regarding "how quickly [the defendant] moved" following the officer's command.[3]  *Id.* at 271.  In that case, there was "some evidence that [the defendant] complied with the one clear request and, arguably, moved within a

---

[3] In addition, the court concluded that there was a disputed fact issue as to whether the defendant was asked to move from a sidewalk or from a street.  *Id.* at 270.  The Lousiana Court of Appeal has decided that the statute "does not prohibit standing on a public sidewalk," but has not yet addressed how the statute applies on public streets.  *Id.*  This case raises no such difficulties, as Carthon was asked to leave Calvary Baptist Church's private property.

reasonable time." Here, even taking the facts in the light most favorable to Carthon, there is no evidence to suggest that he manifested any intention of complying with Deputy Jacobs's command to leave.

In short, Carthon has not shown that the officers lacked probable cause for his arrest. Accordingly, they are entitled to qualified immunity. In addition, because the officers acted reasonably, even assuming that Calvary Baptist Church maintained control over the officers, it cannot be held vicariously liable for their actions.

AFFIRMED.